CocA-CoLA BOTTLING COMPANY OF SOUTHEAST ARKANSAS
*v.* BELL.

4-4751

Opinion delivered October 18, 1937.

*Joe W. McCoy* and *Rowell, Rowell & Dickey,* for appellant.

*F. D. Goza* and *Glover & Glover,* for appellee.

SMITH, J. Evangelee Bell, a girl thirteen years old, suing by her father as guardian and next friend, recovered judgment for $7,500 against appellant, to compensate damages alleged to have been sustained by drinking a portion of a bottle of Coca-Cola, bottled by appellant, containing an infected fly. The child's mother purchased the Coca-Cola and brought it home to her daughter, who, upon drinking a portion thereof, became violently ill. Testimony was offered by appellant to the effect that the child was sick at home before drinking the Coca-Cola; but this fact was denied. The drink was purchased and partly consumed on June 17. The child continued sick and grew worse, and on September 11 or 12 was carried to Malvern, where Dr. W. F. Barrier was consulted, and he finally diagnosed the illness as a case of amoebic dysentery. This appears to be a tropical disease, which is very rare in this country. Dr. Barrier testified that the disease was caused by the amoebic germ, which is carried from the secretion of human beings, and medical authorities say that flies carry the amoebic germ.

In answer to a hypothetical question, Dr. Barrier stated that "If I had a patient on the 17th of June, 1936, who was in good health and was normal in every particular, and on that occasion she drank two-thirds of the bottle of Coca-Cola, and immediately started to vomit, and vomited all night, and that, after that vomiting, she started to lose weight, and would pass off mucus, and continued to do it until this time, and if there was a fly in the Coca-Cola, and the fly had an amoebic germ on it, I would attribute the disease to the fact that she had drank the Coca-Cola with a fly in it." This doctor stated that anywhere from four days to three months would be required to develop amoebic dysentery after the germ had been received in the system. It was not contended that the child swallowed the fly.

Dr. Barrier did not testify that the fly in the bottle had an amoebic germ on it, nor did any other witness. On the contrary, Dr. Mahlon Prickett, who entertained the same opinion, hypothetically expressed by Dr. Barrier, stated that he was called to attend the child. He further

testified: ''I removed the top from the Coca-Cola and poured some of it out and strained it, and the objects we strained out we put on a slide, and half of the remaining solution I sent to the state laboratory, and received a report from the state laboratory; testing for ova parasites and intestinal parasites.'' Asked what that report was, he answered: ''They reported no parasites found.'' This witness stated further that he did not always rely on negative reports of any laboratory tests, and did not regard the test made as conclusive. A wing and a leg of the fly were preserved, but they were not examined, as they were in a decomposed state.

Over the objection of appellant the court gave an instruction numbered 1 reading as follows: ''If you find from a preponderance of the evidence in this case that the said Evangelee Bell drank the Coca-Cola as alleged and that there was a fly, bug, insect or foreign substance, in the said Coca-Cola, as alleged, and that she became poisoned or infected by reason of having drunk from the said Coca-Cola, as alleged, then you are instructed that this evidence is sufficient to make a *prima facie* case of negligence against the defendant company, and shifts the burden of proof on the defendant to prove that it was not negligent in cleansing, refilling, and inspecting the bottle. And if you find that the most modern machinery was used in cleansing, refilling and inspecting the bottle, and that its plan and system was to use every precaution in the cleansing, refilling, and inspecting the bottle, this is not sufficient alone to meet the burden of proof cast upon the defendant company and overcome the *prima facie* case.''

The giving of this instruction is defended upon the ground that it declares the law as stated in a headnote to the case of *Coca-Cola Bottling Co.* v. *McBride,* 180 Ark. 193, 20 S. W. (2d) 862. We there said that the presence of a deleterious substance in the bottle was sufficient to make a *prima facie* case of negligence, and shifted to the manufacturer the burden of proving that there was no negligence in cleaning and refilling the bottles with Coca-Cola and in inspecting them after they were filled, and

that proof of the manufacturer's plan and system to exercise every precaution was not sufficient alone to meet the burden and overcome this *prima facie* case.

We reaffirmed that holding in the case of *Coca-Cola Bottling Co.* v. *Massey,* 193 Ark. 423, 100 S. W. (2d) 681, but we there explained this language as follows: "By this it was meant that such testimony was not conclusive as a matter of law, but that the presumption of negligence arising from proof of the presence of the deleterious matter was not overcome by showing the care usually employed to prevent its presence, and to discover it, if it were in a bottle. In other words, the case presented, under the conditions stated, is for the consideration and determination of the jury whether, as a matter of fact, there was extraneous matter in the bottle when sold to the consumer, and, if so, whether it was there when it left the plant of the bottler and its presence had not been discovered through lack of care in bottling the drink and the inspection of the bottle containing it."

This instruction declares as a matter of law what should have been submitted to the jury as a question of fact, that is, whether the testimony as to the care used by the manufacturer had overcome the *prima facie* presumption arising from the presence of the fly in the bottle. This instruction tells the jury as a matter of law that this testimony as to care in bottling and inspecting "is not alone sufficient to meet the burden of proof cast upon the defendant company and overcome the *prima facie* case." It was for the jury to find—and not for the court to say—whether the testimony had overcome the *prima facie* case of negligence arising from the presence of the fly in the bottle. It has been frequently held, following the case of *Duckworth* v. *State,* 83 Ark. 192, 103 S. W. 601, that the unexplained possession of property recently stolen constitutes evidence legally sufficient to warrant a conviction of larceny or the crime of knowingly receiving stolen property. But it was held in the case of *Sons* v. *State,* 116 Ark. 357, 172 S. W. 1029, that an instruction that such evidence is sufficient to sustain a conviction amounts to a charge on the weight of the evi-

dence and is for that reason an invasion of the province of the jury.

In condemning a similar instruction in the case of *Blankenship* v. *State*, 55 Ark. 244, 18 S. W. 54, Judge BATTLE said that it was within the exclusive province of the jury to determine, under the instructions of the court as to the law of the case, when the evidence is sufficient to convict, as the court has no right to point out what inferences may or should be drawn from particular facts in proof.

In the case of *L. B. Price Mercantile Co.* v. *Cuilla,* 100 Ark. 316, 141 S. W. 194, Chief Justice MCCULLOCH said that while the jury may infer malice from want of probable cause it is error to instruct the jury that they may make such inferences, as this would amount to an instruction on the weight of evidence, which may not be done. See, also, *Thomas* v. *State*, 85 Ark. 138, 107 S. W. 390; *Reeder* v. *State*, 86 Ark. 341, 111 S. W. 272; *Mitchell* v. *State,* 125 Ark. 260, 188 S. W. 805; *Mays* v. *State,* 163 Ark. 232, 259 S. W. 398.

The judgment must be reversed for another reason. Proof of the fact that a fly was found in the bottle, and that flies do carry the germ of the disease from which appellee is suffering, does not suffice to support the verdict. It is mere conjecture that the fly found in the bottle was a carrier of the germ and had communicated the disease to appellee. The only definite proof upon the contamination of the drink is to the effect that no parasites were found therein, and while it may be true that this test was not conclusive the fact is that it is the only testimony upon that issue of fact, and it is mere surmise and conjecture to say that the portion of the drink consumed by appellee was in fact tainted and infected with a germ which caused the disease, while the remaining portions of the drink were not.

The judgment must be reversed as the testimony does not support the finding that appellee's illness was caused by the presence of the fly in the bottle; but if there was other damage compensation for that damage, alone, may be recovered. The judgment is reversed, and the cause remanded.