WILLIAM H. STONE, Respondent, v. FARMINGTON AVIATION CORPORATION, a Corporation, Appellant, No. 42991—253 S. W. (2d) 810.

Division One, January 9, 1953.

*Dearing & Matthes* and *M. C. Matthes* for appellant.

*Robert A. McIlrath* and *Tyree C. Derrick* for respondent; *Karl E. Holderle, Jr.,* of counsel.

LOZIER, C.—On August 31, 1947, plaintiff-respondent (herein called plaintiff) was injured in an airplane crash at Grand Glaize Airport which is adjacent to Highway 54, south of Bagnell Dam. He had a verdict and judgment for $10,000 against defendant-appellant corporation (herein called defendant). Defendant appealed. This is the second appeal. See Stone v. Farmington Aviation Corporation, 360 Mo. 1015, 232 S. W. 2d 495.

At the second trial, plaintiff's sole submission was breach of an alleged express warranty. One of defendant's instant assignments is that plaintiff failed to make a submissible case in that the representation made by defendant's agent was not an express warranty.

Defendant, operator of an airport and flying school at Farmington, rented planes to licensed pilots. One of defendant's officers and agents, Lovitt, had given plaintiff the instruction and training which enabled plaintiff to secure his private pilot's license, then

requiring 20-30 flying hours. Thereafter, plaintiff had flown several of defendant's planes and had over 100 flying hours on August 31, 1947.

Several days before August 31, 1947, plaintiff told Lovitt that he (plaintiff) was to be married on that date and wanted to rent a plane for the purpose of flying with his bride to the Grand Glaize Airport on that day. Plaintiff asked for a certain plane but was told that it would not be available. Plaintiff asked about the course to the Grand Glaize Airport. Lovitt said that he need not plot a course, that plaintiff could follow a series of steel towers. Defendant agreed to rent plaintiff a plane for his honeymoon trip at $8.50 per hour, flying time, payable when plaintiff returned the plane.

On August 31, about noon, plaintiff and his bride came to the airport. He testified: "A. Well, when I first arrived at the airport, I asked them if the plane was ready, and I believe at that time they were fueling the plane and making it ready, and was, within a few minutes, ready, and when I got out to get in the plane, I looked the plane over from the outside. I asked them if it was ready to go and in good shape, and they informed me that it was. Q. What did they say? A. They said, '*It is all ready to go; it is in good shape.*' Q. Who said that? A. That was Mr. Lovitt." (We have italicized the representation plaintiff relies upon as an express warranty.)

Plaintiff, with his wife-passenger, flew west and landed at the Rolla Airport where he had the plane's gas and oil supply checked. About an hour later, he flew to the Grand Glaize Airport. While he was preparing to land, oil was suddenly sprayed over the windshield's left side. Plaintiff claimed (and we shall assume) that this interference with plaintiff's vision prevented him from seeing an electric transmission line on Highway 54. The plane's wheels struck the wires, the plane "nosed" downward and crashed and plaintiff was injured. There was no evidence as to the source of the oil spray or the condition which caused it to appear on the windshield. But we shall assume, as did counsel for both parties, that the oil came from the motor.

The sole theory upon which plaintiff submitted his case was: Lovitt's representation (that the plane was "ready to go" and was "in good shape") was an express warranty that the plane "had been inspected and made ready for flying and was in good mechanical condition and fit for the trip plaintiff intended to make to the Grand Glaize Airport"; that plaintiff relied upon [812] such "warranty"; and that plaintiff's injuries were the direct and proximate result of defendant's breach of [express] warranty "in furnishing him with a plane that leaked oil."

Bailment of airplanes is governed by the general rules of bailment. 2 C.J.S., Aerial Navigation, Sec. 17, p. 906; 6 Am. Jur.,

Aviation, Sec. 21, p. 15. See Rhyne, Aviation Accident Law, Chap. V, p. 106; Fixel, Law of Aviation (3rd Ed.); Chap. XVIII, p. 408. We have been unable to find a case wherein, as in the instant case, the injured pilot-bailee of a plane has sought recovery from the bailor-for-hire for breach of express warranty.

An express warranty may be oral, need not be stated in technical words or make specific reference to a particular defect or condition covered thereby, and may be inferred from an affirmation or representation of fact; the scope of an alleged express warranty depends upon construction, in the light of all the surrounding circumstances, of the language used; and, generally, the scope and breach of an alleged warranty are for the jury. See Turner v. Central Hardware Co., 353 Mo. 1182, 186 S. W. 2d 603, 609-610[14], 158 A.L.R. 1402. However, where the uncontroverted facts do not reasonably support more than one inference, these matters are for the court. 77 C.J.S., Sales, Sec. 369, p. 1305.

We do not believe that, under the circumstances, a jury could reasonably find that Lovitt's statement was a positive affirmation or representation that no defect or condition would develop in the motor which would cause the oil to spray on the windshield. Plaintiff was a pilot with over 100 flying hours. Lovitt was a pilot with World War II and civilian flying experience. Lovitt had been plaintiff's instructor during plaintiff's first 20-30 flying hours, those preceding the issuance of plaintiff's pilot license. Plaintiff had thereafter rented defendant's planes. When plaintiff arranged with Lovitt to rent a plane for his honeymoon trip and had him check the course to the Grand Glaize Airport, plaintiff asked for a particular plane. Arrived at the airport on August 31, 1947, plaintiff saw the plane he was to fly, one which he himself had flown a few days before. He first "asked them if the plane was *ready,* and I believe at that time they were *fueling the plane and making it ready* and *was within a few minutes ready.*" Plaintiff himself made a "casual inspection of the [plane's] controls, surface and outside." Plaintiff then "asked them if it was *ready to go* and *in good shape.*" Lovitt's reply was: "*It is all ready to go; it is in good shape.*"

Obviously, the two pilots were talking about the same thing—the plane's "readiness to take off." In all probability, plaintiff, in his question ("ready to go and in good shape?") was referring to the mandatory (by Federal regulations) pre-flight inspection, an inspection with which plaintiff was undoubtedly familiar. (Lovitt testified that he made such an inspection which, according to him, was "a visual inspection of the exterior and checking gas and oil. It doesn't entail going into the airplane and tearing it apart." Plaintiff himself made a "casual inspection of the controls, surface and outside" but did not check the oil and gas gauges.) In any

event, viewed against the background of all the other circumstances, Lovitt's representation, in the same language plaintiff had used in his inquiry, cannot reasonably be construed as an express warranty that "no mechanical defects will develop on your trip which will cause oil to spray on the windshield." Under the instant circumstances, we do not believe that the jury could reasonably find that Lovitt's statement amounted to, or would reasonably be understood by another pilot as amounting to, more than assurance that the plane had been properly fueled and oiled and was in flying condition, free from defects which, in the exercise of ordinary care, could have been discovered upon proper inspection by defendant.

■ Furthermore, in the absence of a provision to the contrary, an express warranty applies only to defects existing at the time of the sale or bailment. See 77 C.J.S., Sales, Sec. 321, p. 1172; 46 Am. Jur., Sales, Sec. 300, p. 483; 8 C.J.S., Bailments, Sec. 25, p. 258; 6 Am. Jur., Bailments, Secs. [813] 189, 194, pp. 306, 309. Plaintiff argues that "if the plane had been in good shape, it would have not leaked oil," and points out that several witnesses testified generally that an airplane motor "in good working condition" or "in good operating condition" or "operating properly" would not spray oil. Such testimony, standing alone, was not substantial evidence tending to show that, when defendant delivered the plane, the motor had a defect which caused the sudden oil spray 1½ or 2 flying hours later.

Plaintiff cites several cases (1) wherein, he says, the courts "construed certain general language, in the light of the facts surrounding the making of the statements, to be express warranties." We believe that the inapplicability of those cases is shown in Footnote 1.

■ Instant defendant should have had a directed verdict as "the facts in evidence and the legitimate inferences therefrom are so strongly against the verdict as to leave no room for reasonable minds to differ." Kick v. Franklin, 342 Mo. 715, 117 S. W. 2d 284, 287[1]. Accordingly, the judgment should be reversed. But the cause should not be remanded for new trial. At the first trial, plaintiff submitted his case upon the theory that the cause of his injuries was the breaking of a rotten and unsafe safety belt attached

---

[1] Southern Iron & Equipment Co. v. Smith, 257 Mo. 226, 165 S. W. 804 (express warranty that locomotive engines had "been overhauled and were in first class operating condition for use in construction service"); Ralston Purina Co. v. Swaithes, (Mo. App.) 142 S. W. 2d 340 (express warranty that a certain hog feed was "a whole and complete feed"); Turner v. Central Hardware Co., 353 Mo. 1182, 186 S. W. 2d 603, 158 A. L. R. 1402 (express warranty that a ladder was "safe"); Wood Preserver Co. v. Springfield Gas & Elec. Co., (Mo. App.) 243 S. W. 239 (express warranty that drums would be filled with "good oil"). Hope Engineering & Supply Co. v. D. N. Lightfoot & Sons, (Mo. App.) 193 S. W. 624, involved an "implied" warranty. Negligence, not warranty, was involved in Spelky v. Kissel-Skiles Co., (Mo. App.) 54 S. W. 2d 761.

to the rear seat, in which plaintiff's wife was sitting. See Stone v. Farmington Aviation Corporation, 360 Mo. 1015, 232 S. W: 2d 495, 496[1]. Upon that appeal, we held that plaintiff failed to make a submissible case upon the only theory he had submitted. However, we noted that evidence pertaining to the oil spray had been rejected by the trial court because "not plead as a ground of negligence," and that plaintiff had not been permitted to amend his petition in this respect. We referred to such evidence "as tending to establish the possibility that plaintiff may not have fully developed or exhausted his case and as bearing on whether we should remand." Reserving our views as to any matters not then before us, we remanded to allow plaintiff, if he so desired, to amend his petition.

Plaintiff's amended petition based his claim upon several allegedly negligent acts or omissions, breach of "implied" warranty and breach of express warranty. At the second trial, plaintiff was permitted to offer such evidence as he desired in support of his theories. But, at the close of the case, plaintiff, abandoning negligence and breach of "implied" warranty, went to the jury solely upon breach of express warranty, and received a verdict upon that theory.

Defendant's after-trial motion for judgment (in accordance with his trial motion for a directed verdict, RSMo 1949, Sec 510.290, V.A.M.S.) was overruled. In such a case, the appellate court generally does not consider whether a plaintiff made a submissible case upon any theory of recovery which he abandoned below. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S. W. 2d 91, 93-95; Bean v. St. Louis Public Service Co., (Mo. App.) 233 S. W. 2d 782, 785[3,4]. But, as stated in Smith v. Terminal R. R. Assn. of St. Louis, (Mo. App.) 160 S. W. 2d 476, 479[8, 9]: "The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a [814] proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses." (And see McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S. W. 2d 704, 709[7], wherein we remanded because of our belief that the plaintiff may have been justified in submitting an erroneous theory.)

The above quoted principle was approved in Hunt v. Chicago, M. St. P. & P. R. Co., 359 Mo. 1089, 225 S. W. 2d 738, 741[3]. However, we there held that the circumstances of that particular

case did not justify a remand, saying: "In the first place, the appellant's petition alleged several grounds of primary negligence as well as the humanitarian negligence. Yet, he chose to abandon all grounds of primary negligence and go to the jury solely on the humanitarian negligence. Nor is there the slightest suggestion that the facts were not fully developed. We think this case is governed by the rule announced by this court in the case of Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S. W. 2d 835, loc. cit. 851, wherein we said: '. . . where a party has got the benefit of presenting his evidence on *all* his pleaded assignments to the jury, and of thereby impressing their minds with the magnitude of his adversary's dereliction; and then deliberately chooses to restrict the submission to one issue because he believes that is to his advantage—such a course is more a matter of legal strategy than of misadventure.' " (225 S. W. 2d l. c. 741-742[4].)

The instant case has been tried twice. After the first trial, plaintiff was given an opportunity to, and did, amend his petition. At the second trial, plaintiff was permitted to develop his evidence in support of all of his pleaded theories. He then elected to abandon two of his theories and to go to the jury solely upon breach of express warranty. As plaintiff was not precluded from submitting all of his available evidence as to all of his pleaded and trial theories (and cannot be said to have justifiably submitted an erroneous theory), we should not now consider and determine whether he made a submissible case upon any of the issues he himself chose not to submit. As plaintiff is not entitled to another trial upon his abandoned theories, we do not remand.

The judgment is reversed. *Van Osdol* and *Coil, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. *Conkling, J.,* and *Hyde, P. J.,* concur; *Hollingsworth* and *Dalton, JJ.,* concur in result.