D. W. CLARK, Respondent,

v.

R. H. VAUGHAN and Bettie J. Vaughan,
Appellants.

No. 22409.

Kansas City Court of Appeals.

Missouri.

Nov. 5, 1956.

Harry Howard, Kansas City, for appellants.

John L. Sheridan, Donald E. Raymond, Kansas City, Pew, Taylor, Welch & Sheridan, Kansas City, of counsel, for respondent.

DEW, Presiding Judge.

This is a suit on a note signed by the appellants, husband and wife, dated November 1, 1951, payable in installments to the respondent in the total principal sum of $2,900, plus interest. Appellants filed a counterclaim for refund of $100 cash paid by them to respondent, independently of the note. A jury was waived and the case was tried on May 21, 1955, to the Court. The judgment was for the respondent and against both appellants on the petition in the sum of $2,900 principal and $558.75 interest, a total of $3,458.75. The judgment was also in favor of respondent on the appellants' counterclaim.

The petition pleaded the terms of the note and alleged that it was past due and unpaid. A verified copy of the note was attached.

The answer alleged that appellants were at all times mentioned husband and wife; admitted the execution of the note, and, among other defenses, pleaded absence and failure of consideration. The answer tendered back to the respondent "a certain certificate of stock", purporting to have been issued in consideration of the note. Appellants' counterclaim was to recover $100 in cash which was alleged to have been paid by them to respondent as a down payment on the price agreed upon for the purchase of corporate stock.

Respondent's reply was a general denial of new matter, but admitted the payment of $100 as part of the agreed purchase price of the stock.

At the trial the respondent introduced in evidence the above described note which showed installments accrued but showed no credits. Respondent then rested his case.

The appellants offered in evidence the contract for the purchase of the stock referred to, which contract the respondent admitted was the contract entered into by the parties for the sale and purchase of the stock, and admitted that the note was given for the remainder of the agreed purchase price. The parts of the contract pertinent to the points raised in this appeal are:

"This Agreement, made and entered into this *1st* day of November, 1951, by and between D. W. Clark, of Kansas City, Missouri, party of the first part, and R. H. Vaughan and Betty J. Vaughan, of Kansas City, Missouri, parties of the second part:

"Witnesseth:

"1. That for and in consideration of the sum of Three Thousand ($3,000.-00) to be paid as herein provided, the party of the first part agrees to sell and assign to the parties of the second part Three Hundred Thirty (330) fully paid and non-assessable shares of the common stock of K-9 Products Company, a corporation.

"2. That the purchase price of said shares shall be paid as follows: One Hundred ($100.00) Dollars to be paid in cash upon the signing of this contract, and Two Thousand Nine Hundred ($2,900.00) Dollars to be paid by the execution of the promissory note of the parties of the second part in said sum with interest thereon at the rate of five (5%) percent per annum, payable $300.00 on the *1st* day of February, 1952, and $100.00 on the *1st* day of each succeeding month until the entire sum is paid. Party of the first part agrees that in the event the entire principal amount of said note is paid within one year from the date of this agreement, parties of the second part will be released and discharged from any and all liability for interest on said note.

\*     \*     \*     \*     \*     \*

"In Witness Whereof, the parties have hereunto set their hands the day and year first above written.

"D. W. Clark (Signed)
"D. W. Clark
"Party of the First Part.

"R. H. Vaughan (Signed)
"R. H. Vaughan

"Betty J. Vaughan (Signed)
"Betty J. Vaughan
"Parties of the Second Part."

The respondent was called as a witness by appellants' counsel and he testified that the note was given and $100 cash paid to him for the 330 shares of stock described in the contract. He was asked:

"Q. And that also the certificate of stock that was issued, you did follow up and issue, cause to be issued a certificate of stock? A. That is right.

"Q. In an effort to conform with your obligation under the contract to transfer and assign the shares of stock to him? A. He bought the stock, he and his wife, and it was issued to them, and he paid me a hundred dollars down and a note for $2,900 on the balance of it, certain terms and conditions."

Appellants' counsel thereupon produced a certificate of stock and asked the witness if "that is the certificate that was issued", and witness answered "Yes." Appellants' counsel then, without objection, introduced in evidence a certificate No. 9 dated November 1, 1951, for 367 shares of common stock of K–9 Products Company in the name of R. H. Vaughan, signed by the respondent as secretary, and by his brother Julian P. Clark, as president. Appellants then introduced in evidence a letter from the Secretary of State of Missouri to the effect that the company was incorporated February 26, 1951, and its charter was forfeited January 1, 1953, for failure to file annual registration report and antitrust affidavit for 1952.

Respondent, as a witness for the appellants, further testified that he had not solicited the purchase of his stock by the appellants, but that respondent's brother reported to him that appellant R. H. Vaughan was interested in a managerial position with the company and since respondent was not active in it but only held stock in it, had inquired if respondent would sell his stock. He said appellant R. H. Vaughan came to Kansas City and entered into negotiations to buy what stock respondent owned in the company. Thereafter, the terms were agreed upon, the papers drawn, and appellant R. H. Vaughan and respondent's brother took the papers to appellant Bettie J. Vaughan for her signatures.

Appellant R. H. Vaughan testified that after he signed the note and contract, he received through the mail the certificate of stock for 367 shares introduced in evidence by the appellants. He said his wife had never seen it until a few days before the trial. He said there were no other writings in the transaction. He was asked by his counsel:

"Q. Now this contract calls for 330 shares of stock, but the certificate is for 367 shares of stock. That difference of 35 shares, something like that, is accounted for— A. Do you want me to account for them? I was to purchase that stock from Julian Clark on an entirely different basis, that is, we were to determine the price and I was to pay it out of profits.

"Q. That had nothing to do with this note? A. With this suit or this note, no.

"Q. A separate transaction? A. Yes, sir."

Respondent offered no evidence in rebuttal.

Appellants' first and second points on this appeal may be stated in one, namely, that the consideration of the note failed because, under the contract with the appellants, husband and wife, the consideration

for the note signed by appellants, was the promise of respondent to sell and assign the stock to both appellants, in which case their title would thereby be as tenants in the estate by the entirety, and the issue of stock to appellant R. H. Vaughan alone defeated their ownership in that capacity, to which they were entitled. They further point out that as far as the record shows, Bettie J. Vaughan never received anything in consideration for her execution of the note in evidence, nor in the performance of the contract.

When, at the close of all the evidence and at the request of the Court, counsel for appellants orally presented their theory of defense, the following occurred:

"Mr. Sheridan: (One of respondent's counsel) May I just say one thing? Plaintiff carried out his obligation under this agreement when he endorsed his stock in blank to this man and his wife, delivered it to them. Now, it is true that due to a request the corporation later issued a stock certificate just to him.

"Mr. Howard: It is not in evidence that he accepted the stock.

"Mr. Raymond: (One of respondent's counsel) Nothing in evidence that the stock didn't go to him and his wife.

"Mr. Sheridan: Consideration was the transfer of Mr. Clark's stock to Mr. Vaughan and his wife, which was done. The corporation later issued a new certificate of stock to Mr. Vaughan at Mr. Vaughan's request. The consideration for the note was completely carried out.

"Mr. Raymond: Not in evidence."

The Court stated that appellant R. H. Vaughan had signed the note and had received the stock; that he could not accept the fruits of the contract and not pay therefor; that even if Mrs. Vaughan were not liable, appellant R. H. Vaughan certainly would be. Counsel for appellants urged

that the contract was indivisible; that R. H. Vaughan would have no right to accept the stock individually to the exclusion of his wife under the joint contract, nor did R. H. Vaughan receive what he had contracted for. Again counsel for respondent stated to the Court:

"Mr. Sheridan: She signed the note, she signed the agreement. She understood the whole transaction.

"I call your attention again to the fact that the contract called for the sale of Mr. Clark's stock and he transferred that stock to Mr. and Mrs. Vaughan. Because the husband, for some personal—

"Mr. Howard: I object to that and move it be stricken out.

"Mr. Sheridan: The certificate issued by the corporation is not evidence in this case for that purpose. The point is that's a later transaction and proves nothing. They don't deny and never have denied that Mr. Clark sold them their stock and transferred it to them. The fact that later on they have a stock certificate issued by a corporation, that could have been 40 times. That's not evidence on the point in issue.

"Mr. Raymond: Who received the stock is—

"Mr. Sheridan: We sold our stock to Mr. and Mrs. Vaughan. What they later did through the corporation with respect to having it issued to one or the other or both—. We were out as soon as we transferred our stock. We owned no further stock and had no further interest. That very day he was appointed secretary and director of the corporation.

"Mr. Howard: Pardon me just a minute. In the first place, they never sold the stock to either one of them. They contracted to sell it, and here is the contract. They agreed to sell and convey, which is an executory contract,

got to be carried into effect. Now, in the efforts to carry it in effect, what have they done, according to the evidence? Issued the certificate only to one of them. Where is the proper performance?"

■ Appellant R. H. Vaughan is in no position to claim failure of consideration of the note in suit. He signed the contract and the note and, according to his testimony, promptly received a certificate in his name alone for all the shares of stock called for by his contract. He permitted the certificate which he received to include 37 shares of the stock in the same corporation purchased by him in another transaction, which he said had no connection with the purchase from respondent. Obviously, the respondent would have no authority to control the form of certificate conveying the additional 37 shares of stock not owned by him. Furthermore, appellant R. H. Vaughan, in possession since November 1, 1951, of the certificate of stock for 367 shares of stock in his name alone, had the full power and sole authority to exchange the same so as to obtain a new certificate in the name of both appellants for the 330 shares purchased from respondent, if he so desired. We conclude that the judgment as against appellant R. H. Vaughan on respondent's petition and on the counterclaim was proper.

■ We next consider the appeal of Bettie J. Vaughan. It is a matter of prime importance that the evidence fails to show any capital stock of the K–9 Products Company was ever issued or in any wise conveyed to appellant Bettie J. Vaughan, nor to anyone for or in her behalf, but that all of the stock contracted for was issued to R. H. Vaughan alone. The statements of respondent's counsel to the Court to the contrary, after the close of the evidence, received over the objection of appellants, were not sufficient or competent to constitute evidence on that vital subject. Robbins v. Brown-Strauss Corp., 363 Mo. 1157, 1167, 257 S.W.2d 643; 88 C.J.S., Trial, § 181, p.

352. "Counsel should neither urge, nor draw inferences from matters not in evidence". Reese v. Illinois Terminal R. Co., Mo., 273 S.W.2d 217, 225. It is provided in Section 401.028 RSMo 1949, V.A.M.S.: "Absence or failure of consideration is a matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto*, whether the failure is an ascertained and liquidated amount or otherwise." There was no evidence offered by the respondent to controvert the evidence that all the shares of stock which respondent agreed to sell to both appellants were conveyed to appellant R. H. Vaughan alone. It is sought, nevertheless, to hold appellant Bettie J. Vaughan liable on her note for the agreed purchase price.

■ However, we deem the record sufficient to indicate that the evidence of compliance as to appellant Bettie J. Vaughan was not exhausted, and in the interest of justice, the respondent should have the further opportunity to present the same fully before the Court on that issue. Hunt v. Chicago, M., St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738; Stone v. Farmington Aviation Corp., 363 Mo. 803, 253 S.W.2d 810; Section 512.160(3) RSMo 1949, V. A.M.S.

■ Appellants make a third point that they are entitled to a judgment for the refund of the $100 paid by them in cash at the signing of the contract, as set up in their counterclaim. In view of our holding in respect to the liability of appellant R. H. Vaughan on respondent's petition, we hold that he has not established the right to the return of such payment or any part thereof. Insofar as appellant Bettie J. Vaughan is concerned, her right to recover ·on said counterclaim is dependent upon a determination of her liability on respondent's position, and therefore must abide a disposition of that issue. Hoelzel v. Chicago, R. I. & P. Ry. Co., 337 Mo. 61, 85 S.W.2d 126; McGraw v. Montgomery, 239 Mo.App. 239, 185 S.W.2d 309.

The judgment is reversed and the cause is remanded with directions to the trial court to hold in abeyance its finding of the amount due by appellant R. H. Vaughan on respondent's petition, and the finding against him on his counterclaim until the case is disposed of by a retrial, hereby ordered, of the issue of liability of appellant Bettie J. Vaughan under respondent's petition and her rights under the counterclaim, and then to reenter the judgment against appellant R. H. Vaughan on the petition, for the amount heretofore found due as of the date of the first trial, and against him on said counterclaim, provided that if upon such retrial the appellant Bettie J. Vaughan is found liable under said petition, said judgment as so rendered shall be jointly against both appellants on the petition and on their counterclaim; but if she be found not liable on the petition, such judgment shall so declare and shall determine her rights under the counterclaim. It is so ordered.

All concur.