ANTHONY MONACO, Respondent, *v.* HALL-EHLERT GMC SALES, INC., et al., Appellants.

Third Department, December 20, 1956.

*Laurence V. Benedict* for Hall-Ehlert GMC Sales, Inc., appellant.

*H. E. Blodgett* for General Motors Corporation, appellant.

*Walter A. Fullerton* and *Charles W. Aussicker* for respondent.

FOSTER, P. J. Plaintiff has a judgment against both defendants, entered upon the verdict of a jury for the sum of $55,000, after a trial in the Supreme Court, Schenectady County. Defendants appeal from the judgment, and from an order denying a motion for a new trial.

The gravamen of the complaint against the defendant Hall-Ehlert GMC Sales, Inc. (hereafter called Dealer) rests in negligence and breach of warranty in the sale of an automobile truck said to have been defective; and in negligence against the defendant General Motors Corporation (hereafter called Manufacturer) for an alleged failure to properly manufacture and assemble the same truck. The jury found liability against the defendants on precisely the grounds claimed.

The truck, which plaintiff purchased from the Dealer, consisted of a chassis, cab and automotive parts, and the purchase price included the installation of a steel dump body and hoist to raise the body, which was furnished by the Gar Wood Corporation on an order from the Dealer, and with which the Manufacturer had nothing to do. With the body the truck weighed 14,000 pounds, and there doesn't seem to be any serious dispute that the Manufacturer designed and sold the truck for a gross vehicle weight of 26,000 pounds. This limitation was stamped on the left door pillar according to the testimony of respondent's own

witness. Thus, after the body was installed, any load over 12,000 pounds was excessive so far as the Manufacturer's design was concerned.

Plaintiff was engaged in the business of hauling sand and gravel. He testified that when he was about to purchase the truck in question he told the Dealer he wanted a truck with a larger carrying capacity than the one he had been using, and that the Dealer warranted the truck in question would carry 30,000 pounds. A representative of the Dealer made out the registration papers for the truck, specifying the gross vehicle weight of 44,000 pounds, and it was on the basis of this weight that respondent paid a license fee. Respondent used the truck for about 30 days prior to the accident, and was accustomed to carrying in it loads of 30,000 pounds and over of sand and gravel. He was able to do this by placing boards in receptacles on the top of the body.

On the day of the accident respondent had delivered two loads of sand, and was on his way back to the sand pit to get a third load, when he heard a peculiar noise in the rear end and the truck began to tip forward. He tried to apply his brakes and found they didn't work. He steered the runaway truck down grade on a hard surfaced road until he came to an intersecting dirt road where he turned off and ran the truck into a bank. It collided with and broke off a telephone pole. He tried to jump clear of the truck but, according to his testimony, the left rear wheels passed over his legs and he received the injuries of which he complained.

The brake failure was caused by the dislodgment or dislocation of the torque rod beneath the body of the truck. A great deal of technical testimony was given at the trial, and doubtless necessary, or at least appropriate there, as to the function of this torque rod and how it should normally operate; but it is unnecessary here to review that testimony in detail for all agree that it was the dislocation of the torque rod that caused the brakes to fail. The problem that confronted the jury was to determine why the torque rod fell. Suffice it to say for our purposes that the torque rod is connected with what is called a ball stud, which is a piece of steel formed at one end in the shape of a ball with a tapered neck and a threaded end. The ball is enclosed in a socket in the end of the torque rod, the taper is placed in a bracket and drawn up tightly by a nut, the bracket being firmly attached to the frame. The nut screws on to the threaded part against the hangar, drawing the stud firmly into the taper and forming a secure connection. Then a cotter pin is supposed to be passed through slots in the end of the nut,

and the jury could find that if the cotter pin was there it would lock the nut to the stud so that it could not unscrew.

After the accident neither the nut nor a cotter pin was found on the end of the ball stud of the torque rod. An expert called for the respondent testified that in his opinion a cotter pin had never been placed in the hole designed for it, and thereby hangs the case against the Manufacturer. He rationalized his opinion on the condition of the cotter pin hole as he found it after the accident had happened. He said that if the cotter pin had been in place it would have prevented the nut, even if the same was loose, from unscrewing and letting the torque rod fall. Just what caused the nut to become loose does not appear, but respondent's expert testified that the threads over which it had been screwed were seriously damaged, the kind of wear that would come from a loose nut dancing back and forth. He testified flatly that overloading would not affect the nut, or the cotter pin if one was in place.

Appellants' expert disagreed with the conclusions of respondent's witness. He laid all the difficulty to overloading, which he said, in substance, placed such a force and strain on the torque rod that it subjected the nut to a cocking action. This in turn resulted either in " fatiguing " the cotter pin and allowing the nut to unscrew, or in " fatiguing " the nut and causing it to split, and at the same time stripping or shearing the cotter pin off. This witness disagreed squarely with respondent's expert as to the absence of a cotter pin at the time the truck left the Manufacturer's plant. He said that his examination of the hole where it should be placed indicated to him that it had been placed there.

In these warring conclusions we see nothing but issues of fact for the jury. Neither the testimony on one side nor the other is incredible as a matter of law, and we cannot say that either one or the other is incredible as a matter of fact. Appellants assert that it is only by piling inference on inference that the version of respondent can be made plausible and acceptable. We do not so view the evidence: the inferences that may be drawn to support respondent's case against the Manufacturer are separate and independent of each other. That the nut was loose may be deduced from the fact that the threads to which it was attached were badly worn. That a loose nut may work off, if there is nothing else to hold it, from the strain and stress of motion, is a self-evident fact; but conceding for the sake of argument that it is a related inference there is no need to rely upon it as an inference. The undisputed testimony is that after the accident the nut was not on the end of the ball stud of the

torque rod and the unequivocal testimony of respondent's expert was that if the cotter pin had been in place the nut could not have come off. On that phase of the case a fair question of fact was presented for the jury without any violation of the inference rule.

Although respondent was not an immediate purchaser from the Manufacturer the latter owed him a duty of reasonable care and vigilance to see that the truck was assembled properly and without any potentially dangerous defect (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382). The appellant Manufacturer produced proof as to its method of inspection, and this was pertinent but not conclusive. If the jury found, as we must assume, that the cotter pin was never in place it could also find that the inspection system was faulty or else not properly carried out. No one contends that a reasonable examination and inspection would not have revealed the absence of a cotter pin in connection with the torque.

What has been said as to the Manufacturer applies with even greater force to the Dealer because the latter not only had a duty of inspection before the vehicle was turned over to respondent but he was also bound by a warranty. In addition the proof shows that the truck had been in and out of the Dealer's garage on several occasions for inspection and repairs. On this appeal the Dealer attempts to raise the issue that there was no warranty, but he is foreclosed on that issue. The complaint alleged a warranty: the answer of the Dealer did not deny it. Moreover the Trial Judge charged and submitted that issue to the jury without any exception as to the existence of a warranty. Counsel for Dealer merely asked the court to charge that if a warranty was breached by respondent in overloading the truck that he could not recover.

We have examined the evidence as to damages and do not find the verdict excessive under the standards ordinarily applied.

The order and judgment should be affirmed, with costs.

BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Order and judgment affirmed, with costs.