**G. L. NICKLAUS, Trustee for Helicopters, Inc., Appellant,**

v.

**HUGHES TOOL COMPANY, Appellee.**

**No. 19490.**

United States Court of Appeals
Eighth Circuit.

Oct. 27, 1969.

Jeff Davis, Jr., of McMillen, Teague, Bramhall & Davis, Little Rock, Ark., for appellant.

Robert S. Lindsey, of Wright, Lindsey & Jennings, Little Rock, Ark., for appellee.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

This is an appeal from the judgment of the district court dismissing appellant's action on the merits after a trial before the court. We affirm.

The relevant background facts are not in dispute. Helicopters, Inc., was an Arkansas corporation and the authorized dealer for the sale of helicopters manu- factured by Hughes Tool Company (appellee), a Delaware corporation having its principal place of business in Houston, Texas.

Following manufacture, extensive flight testing, and experimentation by appellee, all in California, the helicopter involved in this litigation was purchased by Helicopters, Inc., on or about July 17, 1965. It was a prototype model especially redesigned and refitted for use in agricultural dusting and spraying. On August 13, 1965, while being operated by an employee of Helicopters, Inc., the aircraft crash landed in a field near Briscoe, Arkansas. The helicopter had been flown a total of 173 hours.

Subsequently, Helicopters, Inc., was adjudged a bankrupt and G. L. Nicklaus was appointed trustee. He filed this action on December 16, 1966.[1] Recovery of damages to the helicopter was sought on two grounds: negligence and breach of an implied warranty of fitness.

Investigations following the accident revealed that the crash was caused by a complete loss of engine power shortly after takeoff. The investigation also disclosed that one of the metal support clamps affixed to the underside of the aircraft's frame through which passed a bundle of wires, including two magneto ignition wires, was bare and slightly distorted. Metal clamps of the type involved are supplied to appellee by another company. The clamps have a rubber cushion, referred to in the record as a grommet, covering the inside and both edges. The grommet is designed to protect against abrasion of the insulation on the electrical and power wires which pass through the clamp. Appellee concedes that construction of the helicopter without the protective grommet would not be acceptable manufacturing practice.

The post-crash investigation also revealed that the insulation on both of the

---

1. In answer to an interrogatory, appellant stated that the damaged helicopter was insured by Orion Insurance Company, Ltd. of London, and that Helicopters, Inc., had received $22,500 as the value of the aircraft, less a 10 percent deductible. Appellant informs us in his brief that "this is a subrogation case."

magneto ignition wires was frayed and the bare conductors were thus exposed. It stands undisputed that if both of the magneto wires simultaneously came in contact with the metal frame of the helicopter a shorting or grounding would result and cause complete engine failure.

Appellant's position in the district court and here is that by reason of the absence of the protective grommet the normal vibration of the helicopter in flight caused fraying and wearing away of the insulation of the dual magneto wires so that the exposed conductors were permitted to come in contact with the metal frame; that this defect (absence of grommet) occurred during the manufacture or flight testing by appellee, before the sale and delivery to Helicopters, Inc.; and that it was the proximate cause of the crash.

Appellee denied liability, asserting that the required thorough testing and inspection procedures employed by it after the craft had been assembled failed to reveal the defect in question, and that such inspection procedures rendered it virtually impossible for such a defect to go undiscovered. Additionally, the Manager of Quality and Reliability for appellee, Benoni F. Durall, testified that he had conducted a test in which he had simulated maximum helicopter vibration on a similar bundle of wires passing through an unprotected metal clamp for a period of time greatly in excess of 173 hours. The negative results of this test led him to testify that a missing grommet could not have caused such complete and equal fraying of the heavy insulation on the dual magneto wires. Finally, appellee asserted that Helicopters, Inc., was not without contervailing fault. Approximately two months prior to the crash, and one month prior to the sale of the helicopter, a maintenance supervisor in the employ of Helicopters, Inc., performed a 100-hour inspection of the particular helicopter at appellee's request and expense. This inspection required a thorough check of all equipment and systems on the craft, including "all engine electrical wiring for damage and security." The supervisor certified the helicopter to be airworthy. Appellee therefore maintained that, even if the grommet were omitted during the manufacturing process, a thorough 100-hour inspection would have disclosed the defect and the appellant cannot rely upon any warranty as to patent defects.

In resolving the case, the district court specifically found that appellant had not shown by a preponderance of the evidence (1) that a simultaneous "shorting" or "grounding" of the two magneto wires was the result of a missing grommet,[2] and (2) that the helicopter was manufactured and assembled with a clamp which did not have its normal rubber grommet attached. The court further found that the 100-hour inspection by appellant would have included inspecting the electrical wiring, proper inspection would have disclosed the missing grommet, and the defect would have been corrected.[3]

2. In his memorandum letter opinion in this case, Judge Young stated:

"The plaintiff's case depends on the premise that the aircraft was manufactured and assembled with a clamp which did not have its normal rubber grommet, and that the two magneto wires held by the clamp chafed against the metal and 'shorted out' simultaneously. The evidence indicates that if only one had shorted out the plane would only have lost a portion of its power. Here, however, the motor failed completely, apparently from the grounding of both magneto wires.

"There were a number of other wires within this clamp, presumably all exposed to the same vibration, and none of these apparently were affected. These magneto wires were of strong construction. While it is possible that the normal vibration of the helicopter would chafe these two magneto wires alone (as distinct from the other wires) through their layers of insulation and metal cores at the same instant so as to expose the conductor wires simultaneously, such an occurrence would be a coincidence that puts some strain on the imagination."

3. There is testimonial evidence and exhibits showing that the clamp was readily discernible upon a visual inspection of the

Initially, we take note of basic principles of law applicable to this case.[4] A manufacturer has a duty to exercise reasonable skill and care in the design and manufacture of its product, commensurate with the risk of harm flowing from normal use of that product. Larsen v. General Motors Corp., 391 F. 2d 495 (8th Cir. 1968); Ford Motor Co. v. Zahn, 265 F.2d 729 (8th Cir. 1959); Ensign-Bickford Co. v. Reeves, 95 F.2d 190 (8th Cir. 1938); MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N. E. 1050, L.R.A.1916F, 696. This duty also binds the manufacturer with respect to component parts incorporated into its final product, but manufactured by another. Ford Motor Co. v. Mathis, 322 F.2d 267, 3 A.L.R.3d 1002 (5th Cir. 1963); Boeing Airplane Co. v. Brown, 291 F.2d 310 (9th Cir. 1961) (applying California law). As a necessary corollary, a manufacturer has an affirmative duty to make such tests and inspections, during and after the process of manufacture, which are commensurate with the dangers involved in the intended use of the product. Ensign-Bickford Co. v. Reeves, supra, 95 F.2d at 194; C. D. Herme, Inc. v. R. C. Tway Co., 294 S.W. 2d 534 (Ky.1956); Reasor-Hill Corp. v. Kennedy, 224 Ark. 248, 272 S.W.2d 685 (1954); American Radiator & Standard Sanitary Corp. v. Fix, 200 F.2d 529 (8th Cir. 1952). See generally Annot., Manufacturer's Duty to Test or Inspect as Affecting His Liability for Product-Caused Injury, 6 A.L.R.3d 91 (1966).

Where, as here, the plaintiff's claim against the manufacturer sounds in both negligence and breach of implied warranty, he must establish by a preponderance of the evidence these basic elements: (1) that the product was defectively designed or manufactured, Hurley v. Beech Aircraft Corp., 355 F. 2d 517 (7th Cir. 1966); United States Rubber Co. v. Bauer, 319 F.2d 463 (8th Cir. 1963); (2) that the defect was the proximate cause of the damage complained of, Kapp v. Bob Sullivan Chevrolet Co., 234 Ark. 395, 353 S.W.2d 5 (1962); Stone v. Farmington Aviation Corp., 360 Mo. 1015, 232 S.W.2d 495 (1950) (Stone I) (negligence), reversed after retrial, 363 Mo. 803, 253 S.W.2d 810 (1953) (Stone II) (warranty); and (3) that the defect existed at the time the manufacturer parted with possession of the product, Swain v. Boeing Airplane Co., 337 F.2d 940 (2d Cir. 1964); Stone v. Farmington Aviation Corp., supra (Stone II); see Annot., 78 A.L.R.2d 460, 498n.3 (1961); 1 Hursh, American Law of Products Liability § 1:14n.14 (1961). To permit recovery for negligent manufacture, ordinarily plaintiff must show, in addition to lack of reasonable skill and care in the process of manufacture, that the manufacturer failed to make a reasonable inspection or test to discover defects. Ford Motor Co. v. Zahn, supra, 265 F.2d at 731–732 and authorities there cited. See Edison v. Lewis Manufacturing Co., 168 Cal. App.2d 429, 336 P.2d 286 (1959).[5]

---

under part of the helicopter. The clamp was located under the floorboard near the front end of the aircraft, approximately 30 inches off the ground and behind the removable cowling.

4. We deem it unnecessary to determine whether the substantive law of California —the location of appellee's manufacturing and testing facilities—or Arkansas— the locus of the accident—applies in this case, since there is no significant variance in the substantive law of the two states applicable to the issues we consider herein.

5. Under a breach of warranty claim, the plaintiff need not prove lack of reasonable care by the manufacturer, since the latter's freedom from negligence by proper inspection and testing is irrelevant to a determination of liability under warranty. Canadian Fire Insurance Co. v. Wild, 81 Ariz. 252, 304 P.2d 390 (1956). Thus, in Senter v. B. F. Goodrich Co., 127 F.Supp. 705 (D.C.Colo.1954), the plaintiff recovered damages on a breach of express warranty theory notwithstanding the manufacturer's proof of careful testing and inspection of the product in question—an automobile tire—had successfully refuted plaintiff's negligence case.

This brings us to what we regard as the dispositive question, i. e., whether the evidence leaves no room for difference of opinion and establishes conclusively as appellant contends in substance, that the protective rubber grommet was absent from the wire support clamp in question at the time the helicopter was delivered to Helicopters, Inc.

There is in the record evidence supporting appellant's position that the grommet was missing following the crash and that Helicopters, Inc., did nothing after purchasing the aircraft to alter or affect the wire bundle, including the dual magneto wires, which passed through the clamp. On the other hand, the district court had before it evidence counteracting appellant's factual premise. Probative testimonial evidence of appellee was sufficient to convince the district court that this particular helicopter was subjected to several thorough and meticulous inspections and tests, at least one of which was conducted by an FAA inspector. Based upon the thoroughness and exactness of appellee's inspection procedures, its Manager of Quality and Reliability was of the firm opinion that it was highly unlikely that any significant defect, such as a missing grommet, would not have been detected and corrected before sale. Obviously, Judge Young credited this testimony.

■ The appellee's evidence, albeit in large measure circumstantial, was substantial and sufficient in quality to support the district court's findings, (1) that appellee was not chargeable with negligence in the manufacturing process; see Northwest Airlines, Inc. v. Glenn L. Martin Co., 224 F.2d 120, 124, 50 A.L.R.2d 882 (6th Cir. 1955), cert. denied, 350 U.S. 937, 76 S.Ct. 308, 100 L.Ed. 818 (1956); Senter v. B. F. Goodrich Corp., 127 F.Supp. 705 (D.C.Colo. 1954); Coca-Cola Bottling Co. of Southeast Arkansas v. Bell, 194 Ark. 671, 109 S.W.2d 115 (1937); C. D. Herme, Inc. v. R. C. Tway Co., *supra*; (2) that the defect did not exist at the time appellee parted with possession of the helicopter following sale. Monaco v. Hall-Ehlert GMC Sales, Inc., 3 A.D.2d 90, 158 N.Y. S.2d 444 (1956); Tralli v. Triple X Stores, Inc., 19 Conn.Supp. 293, 112 A. 2d 507 (1954); *cf.* Vaccarezza v. Sanguinetti, 71 Cal.App.2d 687, 163 P.2d 470 (1945). Favorable determination of the latter element was essential to recovery under either negligence or breach of warranty. Hurley v. Beech Aircraft Corp., *supra*.

■ Considering that in the final analysis this case presented an issue of fact, our function as a reviewing court is limited to a determination of whether the district court's findings are clearly erroneous. Whitson v. Yaffe Iron & Metal Corp., 385 F.2d 168 (8th Cir. 1967); Manning v. Jones, 349 F.2d 992 (8th Cir. 1965); Rule 52(a) Fed.R.Civ. P.

On the entire evidence, we are not "left with the definite and firm conviction that a mistake has been committed," which is the test to be applied in measuring the findings of the district court. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

In light of our holding it is unnecessary to consider whether Judge Young was correct in finding the evidence failed to establish the cause of the crash, or the alternative theory that appellant is precluded from recovering because Helicopters, Inc., failed to discover the absence of the grommet during its 100-hour inspection.

The judgment is affirmed.