**Gertrude M. WYCKOFF,
Plaintiff-Appellant,**

v.

**COMMERCE BANK OF KANSAS CITY,
Defendant-Respondent.**

**No. KCD 28241.**

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1977.

Motion for Rehearing and/or Transfer
Denied Jan. 30, 1978.

Application to Transfer Denied
March 13, 1978.

F. Russell Millin, Kansas City, for plaintiff-appellant.

John C. Thurlo, Kansas City, for defendant-respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS; Special Judges.

WELBORN, Special Judge.

This litigation originated as an action in replevin by Gertrude M. Wyckoff to recover from Commerce Bank of Kansas City two certificates of deposit issued by that bank which had been pledged as security for a loan. The bank counterclaimed for the amount due on the loan in question. Trial to the court resulted in a judgment in favor of the bank on its counterclaim for $14,-689.36 and against plaintiff in her replevin action. Plaintiff has appealed.

Gertrude Kliwer married Kenneth E. Wyckoff January 26, 1970. The next day Ms. Wyckoff executed necessary instruments to convert her savings and checking accounts at Commerce Bank to joint accounts with her husband. She also designated him a deputy on her safe deposit box at the bank. Ms. Wyckoff also held several certificates of deposit issued by Commerce Bank. The two certificates here in question, No. N 655 for $14,000 and N 672 for $10,500, were endorsed as follows:

"Pay to the order of Kenneth E. Wyckoff or Gertrude Wyckoff as joint tenants with right of survivorship and not as tenants in common."

The certificates, so endorsed, were placed in the safety deposit box.

In May, 1970, Kenneth E. Wyckoff arranged with Richard Conn, an assistant vice-president of Commerce Bank, to borrow $24,500 on the security of the two above described certificates of deposit. A pledge note and assignments of the certificates of deposit as security were prepared for execution by both of the Wyckoffs and given to Mr. Wyckoff to take for execution by his wife.

On May 4, 1970, Wyckoff returned to the bank with the note and assignments executed by Ms. Wyckoff. Conn checked the signatures with the signature cards on accounts of Ms. Wyckoff and was satisfied that she had signed the documents. Mr. Wyckoff then signed the note and assignments in Conn's presence and endorsed and delivered the two certificates of deposit to him. Conn disbursed the loan by giving Wyckoff cashier's checks for $24,000 and $500, payable to Mr. Wyckoff who endorsed and negotiated the checks which were paid by Commerce Bank.

On July 28, 1970, Mr. Wyckoff left Ms. Wyckoff. The next day she examined her safety deposit box and found the certificates of deposit missing. In August, 1970, Ms. Wyckoff, through her attorney, advised the bank that her signatures on the note and assignments were "either forgeries or completely unauthorized by her * * *." Return of the collateral was demanded. The bank ignored the demand and on September 2, 1970, the $10,500 certificate of deposit was cashed and the proceeds applied against the note.

Thereafter, Ms. Wyckoff filed her replevin action, to which the bank responded by counterclaiming for the amount due on the note. As defense to the counterclaim, Ms. Wyckoff pleaded lack of consideration and subsequently raised a defense of usury against the validity of the pledge agreements.

Upon trial to the court, Ms. Wyckoff testified that she had no knowledge of the May 4, 1970 transaction and stated that she had never borrowed from the bank or authorized Kenneth Wyckoff to do so in her behalf. She denied her signature on the note or assignments, although admitting that they looked like her signatures. Expert opinion evidence on behalf of the bank was that the signatures were those of Ms. Wyckoff and the trial court so found.

The trial court found the note on its face was usurious but further found that there was no intention on the part of the bank to charge a usurious rate and that the amount of the note was the result of an error in computation and reformed the note to an amount based upon the then legal rate of 8% interest. The court held against plaintiff on her defense of lack of consideration. Judgment was entered for the bank on its counterclaim for $14,689.36 due on the note and against plaintiff on her replevin claim.

In this court, appellant argues that the trial court erred in finding against her on her defense of lack of consideration. Appellant argues that she received none of the proceeds of the loan, that she was not shown to have been an accommodation party to the loan, that there was no evidence that she authorized her husband to act as her agent in the transaction or that she authorized disbursement of the proceeds of the loan to her husband. She relies upon the case of *Clark v. Vaughan*, 296 S.W.2d 155 (Mo.App.1956), as sustaining her defense in these circumstances.

In *Clark v. Vaughan*, supra, the Vaughans, husband and wife, signed an agreement for joint purchase of corporate stock and executed jointly a promissory note in payment. The stock was issued in the name of the husband alone. In a suit on the note, the court found that the wife's defense of lack of consideration was meritorious if no stock had ever been issued to her. Appellant contends that, inasmuch as she received no proceeds of the note here involved, her situation is the same as that of Ms. Vaughan.

However, in this case, there is no contention that appellant borrowed from respondent or authorized her husband to do so on her behalf. In such circumstances, the complaint of lack of consideration is without merit because there unquestionably was consideration moving to appellant's husband. " * * * [I]t is the settled rule

that a single consideration which moves to any one of two or more contemporaneous comakers of a note will be adequate and sufficient to support the undertaking of them all." *Will v. Trumpelman,* 171 S.W.2d 732, 734[2] (Mo.App.1943). See also *Madison County Bank v. Graham,* 74 Mo.App. 251, 256 (1898); *First Nat. Bank of Hamilton v. Fulton,* 28 S.W.2d 368, 371[9] (Mo. App.1930); *Kopff v. Miller,* 501 S.W.2d 532, 536–537[8, 9] (Mo.App.1973).

Appellant contends that the rule followed in *Will* and *Kopff,* supra, applies only in cases where a pre-existing indebtedness of a husband is the consideration for a note signed jointly by a husband and wife. Such circumstances were involved in those cases, but the rule is not limited to cases involving those facts. The antecedent debt did, in those cases, supply the consideration but that fact was significant only insofar as it provided consideration moving to one of the cosigners of the note. *First Nat. Bank of Hamilton v. Fulton,* supra, applied the rule in a case involving circumstances similar to those of this case.

The trial court correctly concluded that the defense of lack of consideration was not available to appellant.

Appellant also attacks the trial court's conclusion that respondent was a holder in due course of the note. However, appellant has failed to demonstrate wherein respondent failed to meet the requirements of § 400.3–302, RSMo 1969, defining a holder in due course. Appellant states merely that "it is only in rare circumstances that a payee can be a holder in due course." Section 400.3–302(2) clearly recognizes that a payee may be a holder in due course and the bare assertion that respondent here was not does not demonstrate error on the part of the trial court. See UCC Comment on Section 403.3–302 at Vol. 20A, VAMS, pp. 515–516, particularly subparagraph c, paragraph 2.

Appellant's second contention relates to the charge that the note was usurious, entitling her to the return of the collateral security, under § 408.070, RSMo 1969.

At the time of the loan, the maximum legal rate of interest was 8% per annum.

§ 408.030, RSMo 1969. (Since amended to increase the maximum rate to 10%—Laws of Mo.1974, 2d Ex. Sess., p. 968). The note did not recite a rate of interest on its face except for a legal rate of 8% after maturity. However, interest of $526.25 was charged on a 60-day loan of $24,525.00. The parties agree that the interest computed would exceed the 8% per annum rate by some $35.75.

According to Mr. Conn, the bank officer with whom Wyckoff arranged the loan, the rate of interest intended to have been charged was 8%, which would have produced interest of $490.50 on the loan. He explained the difference as due to "a transposition of numbers."

The trial court found that there was no intent to charge a usurious rate, that the amount charged was erroneous because of an inadvertence or transposition, and that it had equitable power to reform the error. The court held that § 408.070, RSMo 1969, does not preclude a lender's showing that a charge of interest in the excess of the legal rate was unintentional or inadvertent and that a pledge of collateral was not to be voided "for an honest or simple mistake." Appellant contends that the trial court, in effect, amended § 408.070 to include a good faith exception which the legislature did not include. She contends that inadvertence or good faith is not a defense to an action for return of collateral under § 408.-070. Appellant does not attack the factual finding of the trial court that the interest on the loan was computed at more than 8% by mistake.

Appellant relies upon general statements found in cases applying § 408.070 to the effect that the statute "is intended to prevent usurious practices, and should be liberally construed so 'as to suppress the mischief and advance the remedy.'" (*Central Missouri Trust Co. v. Smith,* 213 Mo.App. 106, 247 S.W. 241, 243[6] (1923)) and that the statute is clear and unambiguous and "makes the pledge or mortgage based upon usury 'invalid and illegal.' There is no room for construction unless the courts are to take upon themselves the prerogative of writing exceptions into the statute which the lawmakers refused to do." (*Keim v. Vette,* 167 Mo. 389, 67 S.W. 223, 226 (1902).)

As respondent points out, neither of the cases relied upon by appellant involved the question of an erroneous computation resulting in a charge of usurious interest, without intention to exact a usurious rate. Respondent has discovered no cases in this state on this point but relies upon decisions of other jurisdictions which the trial court found persuasive.

Numerous cases from other jurisdictions have held that where an excessive amount of interest is imposed as a result of an error in calculation, the transaction is not to be considered usurious. Such conclusion is generally based upon the proposition that a mistake in calculating, made in good faith, "negative[s] the existence of the unlawful intent necessary to constitute usury." 91 C.J.S., Usury, § 14c, pp. 585–586 (1955). Among cases so holding are: *Stedham v. Swift & Co.*, 79 F.2d 648, 649–650[4–6] (5th Cir. 1935); *Hinton v. Brown*, 174 Ark. 1025, 298 S.W. 198, 199[1] (1927); *Morgan v. Security State Bank of Wewoka*, 168 Okl. 301, 32 P.2d 925, 927[1–4] (1934). See Annotation: "Usury as Affected by Mistake in Amount or Calculation of Interest or Service Charges for Loan." 11 A.L.R.3d 1498 (1967).

Cases in this state have pointed out that "to constitute usury there must exist an intent to charge more than the legal rate for the use of money, * * *." *Hansen v. Duvall*, 333 Mo. 59, 62 S.W.2d 732, 737[6, 7] (1933). See also *Tobin v. Neuman*, 271 S.W. 842, 844[2–5] (Mo.App.1925); *Beneficial Fin. Co. of St. Chas. v. Kitson*, 530 S.W.2d 497, 502[3–5] (Mo.App.1975). Given this element as essential to proof of usury, the conclusion that a mistake such as that here found by the trial court to have been made, negatives the existence of the necessary intent to charge an illegal rate, was properly adopted by the trial court.

Judgment affirmed.

All concur.