**John Joseph MULL, Plaintiff,**

v.

**COLT CO., Inc., et al., Defendants.**

United States District Court
S. D. New York.

Aug. 6, 1962.

Lawrence Lauer, New York City, for plaintiff.

Norbert Ruttenberg, New York City, for defendant Edwin Ackerman.

Bower & O'Connor, New York City, for West Side.

Friedlander & Gaines, New York City, for Andrea.

Geo. J. Conway, New York City, for Ford Motor Co.

Thos. V. Kingham, New York City, for King Ford Motors, Inc.

EDELSTEIN, District Judge.

This is an action arising out of an accident in which plaintiff sustained serious injuries when he was pinned between the rear of his car and the front of a taxicab. Jurisdiction is predicated on diversity of citizenship. Plaintiff is a resident of New Jersey and defendants are, with the exception of Ford Motor Company, all residents of New York. Ford Motor Company is a resident of Michigan. The moving defendants are Edwin Ackerman, Janith Ackerman, Samuel T. Goodman and Marion Goodman, the controlling shareholders of the various cab corporations; a group of corporations which own and operate taxicabs in the City of New York; Ford Motor Company, the manufacturer of the taxicab involved in the instant action; and King Ford Motors, Inc., which sold the taxicab to one of the companies of the taxicab fleet involved herein. All of the movants seek orders pursuant to Rule 12 (b) (6), Fed.R.Civ.P., 28 U.S.C.A., dismissing this complaint for failure to state a claim upon which relief can be granted. Additionally, Samuel T. Goodman, Marion Goodman, defendant taxicab corporations, Ford Motor Company and King Ford move for judgment on the pleadings, Rules 12(c) and 12(h), Fed.R. Civ.P.[1]

Since this is a motion under Rule 12(b) (6), the well-pleaded material allegations of the complaint are taken as admitted for the purposes of this motion. See 2 Moore, Federal Practice 2244 (2d ed. 1961). The facts as they appear from the papers before the court present a somber picture of human tragedy, framed against a backdrop of corporate machinations.

Plaintiff's car was parked on Madison Avenue in front of his employer's office on the Sunday morning of December 21, 1958. Plaintiff had driven into New York City from his home in New Jersey for the purpose of picking up some office furniture and supplies which had been given to him by his employer. After carrying down a number of packages and placing them on the curb, plaintiff stepped into the street directly behind his parked vehicle, opened the trunk, and proceeded to arrange the contents of the trunk to receive the packages which he had brought down from the office. It was while in this position that he was struck by a taxicab being operated by defendant, Max Fermaglick. Fermaglick was driving a taxicab, registered in the name of Colt Company, Inc., in a southerly direction along Madison Avenue on the morning of December 21, 1958. As he approached the intersection of Madison Avenue and 41st Street, the pace of traffic caused him to reduce the speed of the cab. As he moved the gear shift lever from high to a lower gear, the lever jammed, causing the car to stall. Fermaglick got out of the car, opened the hood, ascertained that he was unable to correct the jammed gears, closed the hood, returned to the cab and attempted to move it to the curb to avoid blocking traffic. Since the gears were jammed, Fermaglick attempted to move the vehicle by using the accelerator and starter of the cab, a process known as "bucking." While Fermaglick was so engaged, the hood flew up in front of the windshield, blocking his vision. Undaunted, defendant Fermaglick did not stop the cab, but proceeded blindly with his maneuvers to bring it to the curb. It was then that the cab struck the plaintiff, pinning him between the two vehicles.

1. From the plain language of Rule 12(c), it is apparent that the motion for judgment on the pleadings is available when the pleadings are closed. Since the moving defendants have not served their answers to the amended complaint the Rule 12(c) motion is inappropriate. The issues of law are, however, fully discussed in the text as they relate to the motion to dismiss pursuant to Rule 12 (c).

Rule 12(h) deals with waiver of defenses.

In his affidavit, plaintiff's counsel alleges that the plaintiff sustained extremely serious injuries. There is little or no doubt that he was indeed severely injured. His right leg has been amputated and his left leg was badly shattered. Plaintiff spent 209 days in the hospital immediately following the accident and underwent approximately twenty surgical operations. Up until the time the motion was argued, plaintiff had incurred approximately $30,000 in medical and other expenses resulting from this injury. Since the date of the accident, he has been unable to work.

The Colt Company carries the minimum allowable insurance for taxicabs. At the time of the accident, this amount was fixed by statute at $5,000 for injury to one person. New York Vehicle and Traffic Law of 1929, § 17 as added by Laws of 1940, c. § 46. The statute has since been recodified and the minimum amount raised to $10,000. New York Vehicle and Traffic Law § 370. The complaint alleges that the Colt Company is dominated and controlled by the Ackermans and the Goodmans, who have incorporated 100 corporations, each having two cabs registered in the corporate name and each carrying the same minimum amount of insurance.

The assets of the driver, Max Fermaglick, are miniscule. The only real assets of the Colt Company are the aforementioned minimal insurance and two used taxicabs. It would appear that if plaintiff were to prevail in this action, any award reasonably calculated to compensate him for his loss could not be satisfied out of the available assets of the driver and the Colt Company. Faced with the sobering realization that success at trial may be no more than a pyrrhic victory, plaintiff has joined as defendants a large group of the individual taxicab corporations and the individuals in control of this complex, seeking to pierce the corporate veil for the purpose of holding the entire economic entity liable. Additionally, plaintiff has joined as defendants the manufacturer of the cab and the dealer who sold the cab, seeking recovery on the theories of negligence and breach of warranty.

■ An amended complaint, originally filed as of right by plaintiff, was the subject of a motion to dismiss by Edwin Ackerman. On December 3, 1959, Judge Metzner granted the motion. Mull v. Colt Co., 178 F.Supp. 720 (S.D.N.Y. 1959). An appeal from this decision was dismissed on the ground that the order entered was not a final appealable order. 279 F.2d 25 (2d Cir. 1960). Subsequently the complaint against Samuel T. Goodman was dismissed by Judge McGohey on the authority of Judge Metzner's decision.[2] Plaintiff thereafter successfully

---

2. As one of the grounds for dismissal urged by defendant Samuel Goodman, it is argued that as to him the amended complaint is a nullity since a judgment was entered pursuant to Judge McGohey's order which terminated the action as to him. He contends that service of the present amended complaint by mailing a copy to his attorney is ineffectual.

After a judgment of dismissal has been entered, the appropriate course for a plaintiff seeking to amend is to move to reopen the judgment pursuant to Rule 60(b), Fed.R.Civ.P. Markert v. Swift & Co., 173 F.2d 517, 519–20 (2d Cir. 1949); Ginsburg v. Stern, 242 F.2d 379, 380 (3d Cir. 1957); Cassell v. Michaux, 99 U.S.App.D.C. 375, 240 F.2d 406, 408

(1956); Food Handlers Local 425 Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO v. Pluss Poultry, Inc., 23 F.R.D. 109, 112 (W.D.Ark.1958); Szalkiewicz v. Farrell Lines, Inc., 142 F.Supp. 496, 498 (S.D.N.Y.1956); Von Wedel v. McGrath, 100 F.Supp. 434, 435 (D.N.J. 1951), aff'd., 194 F.2d 1013 (3rd Cir. 1952.) Plaintiff has not done this with respect to the amended complaint as it relates to Goodman. To grant Goodman's motion on this procedural technicality, however, would be but a wasteful formality. If plaintiff were to move formally under Rule 60(b), it is reasonable to assume that the motion would be granted. This litigation involves multiple parties and has been consuming the

sought leave to file a second amended complaint. It is this second amended complaint which is the subject of the instant motions by the defendants.

The situation existing in New York City with respect to taxicab fleets and their responsibilities to those unfortunate enough to be injured in accidents involving their operations merits some general observations before proceeding to consider the respective motions herein. The problems involved in cases arising out of injuries inflicted by negligently operated and negligently maintained taxicabs are not unique. They have come before the courts of New York in various forms during the past few years. Attempts by injured plaintiffs to pierce the corporate veil in order to reach those who are financially responsible have met with less than complete success. The courts have morally condemned the obvious de-

vices, artifices and stratagems engaged in by owners of large fleets to deny injured plaintiffs a fair and just measure of compensation for injuries sustained.

"It is common knowledge that owners of large fleets of taxicabs, for the purpose of limiting the amount of a possible recovery with respect to any accident, have developed a method of continuing to operate those large fleets of many hundreds and perhaps a thousand taxicabs, and yet maintaining the ownership of such taxicabs in the fleet in the names of many corporations. It is also common knowledge that no more than three or perhaps four taxicabs are registered in the name of any one corporation * * *." Boyle v. Judy Cab Corp., 24 Misc.2d 746, 747, 203 N.Y.S.2d 309, 310–11, (S.Ct.1960), modified, 12 A.D.2d 797, 210 N.Y.S.2d 61 (2d Dept.1961). A comprehensive discussion of the "machinations and operations" of the taxi fleets in New York City

time of counsel and the courts for about three years. Although no Note of Issue has been filed as yet, the file of the case contains voluminous motions and cross motions. All the parties are now before the court and all have notice of these proceedings. No useful purpose can be served in further fragmenting this case by requiring unnecessary additional procedural steps. Procedural maneuvering has delayed a disposition on the merits long enough. Accordingly, plaintiff's opposition to this ground of defendant Goodman's motion to dismiss will be deemed a motion to reopen the judgment for leave to file an amended complaint.

Rule 60(b), Fed.R.Civ.P. provides six grounds upon which a court may reopen a judgment. Even assuming that plaintiff could not make the requisite showing of inadvertence or excusable neglect to come within subdivision (1) of Rule 60(b), subdivision (6) is available to him as an independent ground. That clause, which permits judgments to be reopened for any reason justifying relief other than those reasons specifically enumerated, "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Klapprott v. United States, 335 U.S. 601, 615, 69 S.Ct. 384, 93 L.Ed. 266 (1949). Reopening the

judgment to allow this amended complaint as against Goodman is appropriate to accomplish justice. The court is cognizant of the argument available to Goodman that this amendment comes too late. This very argument was made in opposition to plaintiff's motion before Judge Murphy for leave to file the amended complaint at issue here. The argument did not persuade Judge Murphy then, and it does not persuade me now. Since the purpose of this procedure is to preserve to all the parties the right to an adjudication on the merits, I do not see how Goodman can be prejudiced by this amendment.

Accordingly, the motion to vacate the judgment and for leave to amend is granted. The amendment as to Goodman will be deemed effective, *nunc pro tunc*, as of the time the present amended complaint was filed.

Defendant Edwin Ackerman is similarly situated, since there is also a judgment of dismissal entered relating to him. Since Ackerman has not raised this issue in his moving papers, in his memorandum or in his arguments, he may be deemed to have waived it as a defense. Rule 12(h), Fed.R.Civ.P. In any event, what has been said as to Goodman applies equally to Ackerman.

is contained in the opinion of Justice Streit in Teller v. Clear Service Co., 9 Misc.2d 495, 173 N.Y.S.2d 183 (S.Ct. 1958). Although the case concerned a calendar preference and the statistics there contained may be dated, the discussion is nevertheless valuable and illuminating. The court pointed out the growing volume of accidents and personal injury litigation involving taxicabs and emphasized the increasing extent to which fleet owners had incorporated. While part of the motivation for this proliferation of corporations is undoubtedly inspired by tax avoidance considerations, it is equally certain that the more compelling motive is the desire to evade paying the full amount of recoveries for personal injuries resulting from the negligent operation of these taxicabs. See Teller v. Clear Service Co., supra, 9 Misc. 2d at 500, 173 N.Y.S.2d at 188. After reviewing the extent of the monopoly enjoyed by the taxicab industry, its status as a major industry and public utility and the legislative enactments in this area, Justice Streit concluded: "(1) that the public is inadequately protected with respect to compensation for personal injuries sustained through the negligence of taxicabs; (2) that the true owners of most of the large fleets of taxicabs are using a corporate device to defraud the public; and (3) the state and the city are unwitting accomplices of a legalized racket to avoid liability for payment for the negligent maiming and killing by taxicabs." 9 Misc.2d at 503, 173 N.Y.S.2d at 190. I find myself in complete agreement with these conclusions. Since the case before him merely concerned a calendar preference, the Justice was able to do no more than grant the perference, explore the existing inequities and recommend legislative relief. Judge Metzner, in his decision on the prior motion to dismiss, was also of the opinion that "the state and municipal legislative bodies are the places where remedy must be sought." 178 F. Supp. at 723. There is no doubt that the urgent need for legislative action which these courts perceived has not diminished.

Multiple shell incorporations designed to exploit the minimum statutory insurance clearly perverts the legislative intent. The purpose underlying the enactment of compulsory insurance provisions for taxicabs was to protect the riding public and to provide means of recovery to those who suffered from the negligence of insolvent owners. Green Bus Lines, Inc. v. Ocean Accident & Guaranty Corp., 287 N.Y. 309, 39 N.E.2d 251 (1942); Tulchinsky v. Public Service Mut. Cas. Ins. Corp., 245 App.Div. 382, 282 N.Y.S. 944 (2d Dept.1935); cf. In re Concord Casualty & Surety Co., 163 Misc. 108, 111, 297 N.Y.S. 391, 395 (S.Ct. 1937). This enactment by the Legislature was never intended to provide a shield for the evasion of public responsibility through the ingenious employment of the corporate fiction.

It is to be hoped for that the legislature will take effective action to remedy these shocking conditions. It is indeed an unfortunate fact of life that taxicabs roam the streets like predators, preying upon an unsuspecting public which heavily relies upon this form of transportation and believes that the same high degree of care and responsibility obtains in this industry as is customary in every other public utility. Unaware that this industry, clearly vested with a public interest, has fortified itself by various devious devices against discharging its obligations, except in some small measure, the public proceeds to use taxicabs day in and day out, feeling secure in the erroneous belief that it is adequately protected in the event of harm suffered thereby. The industry generally has demonstrated an appalling lack of concern for the public and has been guilty of so shameful an exercise in immorality that it almost defies description. Although legislative action is desirable, this does not mean that the

plaintiff cannot be afforded relief under the law as presently constituted.

## THE MOTIONS OF THE INDIVIDUAL STOCKHOLDER AND TAXICAB CORPORATION DEFENDANTS

■ Plaintiff's initial attempt to pierce the corporate veil in order to reach the individuals behind this corporate facade was unsuccessful. Judge Metzner dismissed the complaint as against Edwin Ackerman, individually. 178 F.Supp. 720.[3]

The opinion, predicated upon the insularity of the corporate business unit as an independent legal entity, did, however, discuss situations where the courts have disregarded the corporate fiction. The court illustrated three such situations: (1) cases where a question of fraud or illegality is present;[4] (2) cases where a corporation is employed as an agent; and (3) cases where the corporate form is completely disregarded and the individuals carry on the business as individuals and not as a corporation. There was no claim before Judge Metzner that the individual stockholders were carrying on their business as individuals rather than as a corporation. The agency the-

ory was disposed of as "inappropriate if the purpose of piercing the corporate veil is to reach the individual stockholder * * *." 178 F.Supp. at 722. The theory of agency, as exemplified in Berkey v. Third Avenue Railway Co., 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599 (1926) and its progeny, was held to apply to intercorporate dealings. And the issue of fraud or illegality did not avail plaintiff, for the court held that there was "no showing of fraud or illegality in the activities of the corporation in this case or in the use of the corporate form for doing business. There is no allegation to the effect that the corporation has violated any statute or regulation in effect either as to general corporate operations or as to specific operations in the taxicab business." 178 F.Supp. at 721.

In his amended complaint, plaintiff has attempted to overcome the defect upon which Judge Metzner based his dismissal of plaintiff's previous complaint. Plaintiff alleges that the various and sundry corporations were formed to enable the defendants to defraud the public and that the methods of corporate operation are breaches and violations of the Police Department Regulations.[5] Specifically

3. Defendants urge that Judge Metzner's earlier decision has become the law of the case. It should be clear that since Dictograph Products Co. v. Sonotone Corp., 230 F.2d 131 (2d Cir.), cert. dismissed, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956), this court is not constrained to accept another court's earlier ruling in the same case. And the question of whether or not to follow Judge Metzner is not a real issue here. The complaint which he dismissed is not before me. The questions before me involve an amended complaint different than the one before Judge Metzner.

4. "The cases indicate that the corporate veil may be pierced where a question of fraud or illegality is present. Berkey v. Third Ave. Ry. Co., 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599; Lowendahl v. Baltimore & Ohio Railroad Co., 247 App. Div. 144, 287 N.Y.S. 62, affirmed 272 N.Y. 360, 6 N.E.2d 56; In re Belt-Modes, Inc., D.C., 88 F.Supp. 141. 144, and

cases cited therein." Mull v. Colt Co., 178 F.Supp. 720, 721 (S.D.N.Y.1959).

5. "TWENTIETH: That upon information and belief, the aforesaid corporations were created, operated, maintained and manipulated by the defendants and each of them as a device and artifice, for the purpose and with the intention of defrauding all persons, including the plaintiff, who were injured by the taxi cabs owned, operated and managed by the defendants, so that such persons would not be able to recover the full amount of the damage sustained by them; and that the aforesaid corporations were mere shams and fictions, the instruments and agents of the defendants and each of them, and that none of the above corporation had a separate existence of their own and serving no other purpose than to enable the defendants to defraud the public, including the plaintiff.

    *      *   .   *    •    *

plaintiff relies upon alleged violations of Sections II A(1), II D(5) and II D(1) of the Police Department Regulations of March 26, 1953, governing the drivers and owners of taxicabs in the City of New York.[6] Section II D(5) prohibits the practice known as "horse hiring." The plaintiff contends that the registered owner of the cab, Colt Co., does not hire its drivers, pay for the gasoline, oil, tires or maintenance, and does not receive directly the proceeds from the operation of its cabs. The other cited sections of the Police Regulations provide that the owner of a cab shall be responsible for checking the driver's identification card and chauffeur's license. Plaintiff urges that the owners of these taxicabs are non-operating owners within the intent and meaning of the Regulations, and that they do not make the check which the Regulations require. Clearly, the purpose of these provisions is to protect members of the public by assuring that cabs are being driven by qualified drivers who have been properly checked and licensed.

■■ The individual defendants argue that these allegations of fraud and illegality are insufficient to sustain liability as to them. They contend that plaintiff has not stated sufficient facts in his complaint and that the allegations there contained are conclusory. The distinction between facts and conclusions which they seek to draw is no longer significant under the Federal Rules. See United States v. Employing Plasterers' Ass'n, 347 U.S. 186, 188, 74 S.Ct. 452, 456, 98 L. Ed. 618, (1954); Oil Chemical & Atom Wkrs, Int'l. Union AFL-CIO v. Delta Refining Co., 277 F.2d 694, 697 (6th Cir. 1960); Mueller v. Rayon Consultants, Inc., 170 F.Supp. 555, 558 (S.D.N.Y.), appeal denied, 271 F.2d 591 (2d Cir. 1959); Rhodes Pharmacal Co. v. Dolcin Corp., 91 F.Supp. 87, 89 (S.D.N.Y.1950); 2 Moore, Federal Practice 1650 (2d ed.). Whether the Rules are construed as providing for issue pleading, see Padovani v. Bruchhausen, 293 F.2d 546, 550 (2d Cir. 1961), or notice pleading, see 2 Moore, op. cit. supra at 1650, it is nevertheless

"TWENTY-SECOND: That the above mentioned operation and method of registration of two taxi cabs each in the names of 100 individual corporations, constituted a breach of the hack owners regulations as promulgated by the Police Department of the City of New York, by virtue of the authority vested in it by the ordinances of the City of New York.

\* \* \* \* \*

"TWENTY-FOURTH: That upon information and belief, the sole purpose for creating 100 individual, inadequately capitalized, corporations to act as the registered owners of the taxi cabs operated by this economic unit, was solely to defraud members of the general public who might be injured by virtue of the operation of these taxi cabs."

6. "II. REGULATIONS FOR PUBLIC HACK OWNERS
"A.—Responsibility as to Employees—
"(1) Before employing a hack driver, the owner shall compare his identification card and chauffeur's license to verify the fact that he is legally licensed to operate a taxicab. This procedure shall be re-

peated daily and no vehicle shall be assigned to a driver who does not possess all of his credentials.

\* \* \* \* \*

"D.—Responsibility as to Operation—
"(1) Records of the following items shall be kept by owners and shall be available at all times for inspection by members of the Police Department:
"(a) Receipts from operations.
"(b) Payments to drivers.
"(c) Corporation tax.
"(d) Social Security tax.
"(e) Disbursements and receipts.
"(f) Mileage run.
"(g) Accidents incurred and public liability claims paid.
"(h) Any information that the Hack Bureau may prescribe from time to time by regulation.

\* \* \* \* \*

"(5) The owner of a taxicab or his agent shall not engage in the practice commonly known as 'horsehire.' This term is understood to mean the hiring out or renting of a vehicle to a hack driver or any other person for use within the City of New York for a stipulated sum over a definite period of time."

clear that all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) (2), Fed.R.Civ.P.; cf. Nagler v. Admiral Corp., 248 F.2d 319 (2d Cir. 1957). Upon reading the complaint, I find that plaintiff has complied with the requirements of the Federal Rules in that he has stated a claim upon which relief may be granted. If defendants need additional facts to enable them to defend, the discovery procedures are available. The rule in this circuit relating to dismissals under Rule 12(b) is by now axiomatic. "A complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." 2 Moore, Federal Practice 2245 (2d ed.); e. g., Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Arfone v. E. I. DuPont De Nemours & Co., 261 F.2d 434, 435 (2d Cir. 1958); Mueller v. Rayon Consultants, Inc., supra. A violation of the regulations as alleged can be related to plaintiff's injury through the link of a breach of the owner's duty to provide qualified drivers for its cabs. Plaintiff should not be deprived of his opportunity to prove his allegations of illegality at trial.

■ The New York cases cited by defendants wherein the complaints were dismissed as to the individuals behind similar taxicab corporations are not controlling here. See Quintero v. Rosenblatt, N.Y.L.J., December 23, 1960, p. 7, col. 2 (S.Ct.); Wraight v. Darby Service Corp., N.Y.L.J., April 20, 1960, p. 13, col. 1 (S. Ct.); Tracy v. A.B.C. Cab Corp., 13 A.D. 2d 785, 216 N.Y.S.2d 679 (2d Dept. 1961). Although this court must follow the substantive law of New York, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it is not bound by procedural rulings of the state courts. The sufficiency of the complaints in the cited cases was measured by the standards of the New York Civil Practice Act, not the Federal Rules. Moreover, the cases were resolved primarily on the inapplicability of the agency theory to the facts presented, and no substantive argument as to fraud or illegality seems to have been considered. Therefore, on this aspect of the motions before me, I hold that the complaint states a claim against the individual defendants which falls within one of the exceptions for piercing the corporate veil as set forth by Judge Metzner.

■ The taxicab corporate defendants have moved also to dismiss the complaint as to them. Denial of these motions is clearly in order. Although the decision on the previous motion in this case was addressed solely to the question of whether an individual stockholder may be held liable, it nevertheless recognized the validity of the agency theory as applied to intercorporate relations. 178 F. Supp. at 721. The rule is well established that where corporations are organized, controlled and utilized so as to make them merely instrumentalities, agencies or conduits of another corporation, the corporate entity will be disregarded. Chicago, M. & St. P. Ry. v. Minneapolis Civic & Commerce Ass'n, 247 U.S. 490, 500–01, 38 S.Ct. 553, 62 L.Ed. 1229 (1918); Berkey v. Third Avenue Ry. Co., 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599 (1926); Lowendahl v. Baltimore & O. R. Co., 247 App. Div. 144, 287 N.Y.S. 62 (1st Dept.), aff'd., 272 N.Y. 360, 6 N.E.2d 56 (1936); Ballantine, Corporations, §§ 136, 138 (rev. ed.1946). "Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent." Berkey v. Third Avenue Ry., supra, 244 N.Y. at 95, 155 N.E. at 61. "When one corporation controls another, and uses it as the means, agency, and instrumentality by which the former carries out and performs its business, it is liable for the torts of the latter." Mangan v. Terminal Transportation System, Inc., 157 Misc. 627, 631, 284 N.Y.S. 183, 188 (S.Ct.1935), aff'd, 247 App.Div. 853, 286 N.Y.S. 666 (3d Dept.1936).

Plaintiff is seeking to hold liable the entire taxicab operation garaged at one location as a single economic entity. The complaint alleges that defendants organized a group of corporations to hold title to two cabs each, which were garaged, maintained and operated centrally. Furthermore, it is alleged that these subsidiary corporations were shams and fictions and that they were so completely dominated and controlled as to negate a separate existence of their own. Manifestly, these allegations of agency, dominion and control are sufficient to sustain the complaint as to the defendant cab companies. "The entrusting of two taxicabs to each of approximately [100] subsidiary corporations in the circumstances set forth in the complaint is sufficient to warrant maintenance of a suit rested on agency, domination and control of the business, policies and practices of the subsidiaries." Robinson v. Chase Maintenance Corp., 20 Misc.2d 90, 92, 190 N.Y.S.2d 773, 775 (S.Ct.1959); Saddler v. Ackerman, N.Y.L.J., December 15, 1959, p. 15, col. 5 (S.Ct.); see Boyle v. Judy Cab Corp., 24 Misc.2d 746, 203 N.Y.S.2d 309 (S.Ct.1960), modified, 12 A.D.2d 797, 210 N.Y.S.2d 61 (2d Dept.1961); Teller v. Clear Service Co., 9 Misc.2d 495, 173 N.Y.S.2d 183 (S.Ct.1958). Whether an agency in fact existed, which corporation was the parent and which were the subsidiaries, and whether they were operated as one economic unit are all questions of fact which plaintiff will have to prove at trial. If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise. His opportunity to do so may not be foreclosed peremptorily by these motions to dismiss.

Plaintiff has attached another string to his bow in an effort to sustain his complaint as against the various motions to dismiss. Plaintiff contends that where a corporation is organized and operated with insufficient capital to accomplish the purposes for which it was incorporated, courts will pierce the corporate veil. Defendants have not addressed themselves specifically to this argument, being content, it would seem, to rest on their general position that the instant case does not present the proper circumstances for disregarding the various corporate entities. The complaint alleges that the one hundred individual cab corporations were inadequately capitalized as measured by the nature, extent and conduct of their business and that the purpose of this device of undercapitalization was to defraud the public.

The rule that inadequate capitalization can serve as a basis for disregarding the corporate entity has been gaining support in the decisions. "An obvious inadequacy of capital, measured by the nature and magnitude of the corporate undertaking, has frequently been an important factor in cases denying stockholders their defense of limited liability. Luckenbach S. S. Co. v. [W. R.] Grace & Co., [4 Cir.] 267 F. 676, 681; Oriental Investment Co. v. Barclay, 25 Tex.Civ.App. 543, 559, 64 S.W. 80, 88. And see Weisser v. Mursam Shoe Corp., [2 Cir.] 127 F.2d 344. Cf. Pepper v. Litton, 308 U.S. 295, 310, [60 S. Ct. 238, 84 L.Ed. 281]; Albert Richards Co. v. Mayfair, Inc., 287 Mass. 280, 288, 191 N.E. 430; Erickson v. Minnesota & Ontario Power Co., 134 Minn. 209, 158 N.W. 979." Anderson v. Abbott, 321 U.S. 349, 362, 64 S.Ct. 531, 88 L.Ed. 793, (1944). "It is coming to be recognized as the policy of the law that shareholders should in good faith put at the risk of the business unincumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege." Ballantine, Corporations, 303 (rev. ed. 1946). Cases in other jurisdictions have

come increasingly to accept inadequate capitalization as a factor in piercing the corporate veil. See, e. g., Garden City Co. v. Burden, 186 F.2d 651 (10th Cir. 1951); Re First Nat'l Bank of Arthur, Ill., 23 F. Supp. 255 (E.D.Ill.1938); Automotriz Del Golfo De California S. A. De C. V. v. Resnick, 47 Cal.2d 792, 306 F.2d 1, 63 A.L.R.2d 1042 (1959); Wallace v. Tulsa Yellow Cab Taxi & Baggage Co., 178 Okl. 15, 61 P.2d 645 (1936); Dixie Coal Min. & Mfg. Co. v. Williams, 221 Ala. 331, 128 So. 799 (1930); see also cases collected in Annot., 63 A.L.R.2d 1051 (1959); Lattin & Jennings, Cases & Materials on Corporations 104–06 (1959); Fuller, The Incorporated Individual, 51 Harv.L.Rev. 1373, 1381–83 (1938); Dix, Adequate Risk Capital; The Consideration for the Benefits of Separate Incorporation, 53 N.W.U.L.Rev. 478, 483 (1958).

The New York courts do not appear to have explored specifically this aspect of the corporate entity problem. In Robinson v. Chase Maintenance Corp., supra, cited by plaintiff, the court, in dealing with a factual situation similar to the case at bar, assumed that inadequate capital is a factor to be considered.[7] It may be argued that Bartle v. Home Owners Cooperative, 309 N.Y. 103, 127 N.E.2d 832 (1955) holds to the contrary. There, the dissent was bottomed upon a view that the subsidiary corporation was an undercapitalized shell. The majority opinion, however, does not discuss inadequate capitalization at all. Had the court wished to hold that inadequate capitalization was not a factor, it could easily have done so. Instead the court accepted the findings of fact made by the lower courts that no fraud existed and that the corporation performed no act causing injury to creditors by a depletion of assets. After setting forth the general rule that the corporate veil may be pierced to prevent

fraud or to achieve equity, the New York Court of Appeals held that on the facts before it the subsidiary had sufficient independence to be regarded as a separate corporation. In Fisser v. International Bank, 282 F.2d 231 (2d Cir. 1960), the Court of Appeals for the Second Circuit dealt with a contention that a grossly undercapitalized subsidiary was a sufficient reason to pierce its corporate veil. The court recognized that "there may be situations in which the launching of a subsidiary corporation upon the stream of commerce with capital grossly inadequate for its expected activities will be indicative of lack of an independent entity." 282 F.2d at 240. It refused to hold, however, that undercapitalization alone would suffice to disregard the entities where the controlling stockholder has at least complied with the formalities of separate incorporation. The cases distinguished in Fisser were ones where undercapitalization was not the only pertinent factor, but was one among others. See Luckenbach S. S. Co. v. W. R. Grace & Co., 267 F. 676 (4th Cir.) cert denied, 254 U.S. 644, 41 S.Ct. 14, 65 L.Ed. 454 (1920); Stark Electric R. Co. v. McGinty Contracting Co., 238 F. 657 (6th Cir. 1917). The present case before the court presents just such a situation where the allegations of inadequate capitalization are but one of the grounds upon which plaintiff seeks to pierce the corporate veil. The New York cases do not indicate that he is precluded from proving this as one of the factors for disregarding the corporate fiction.

To permit the creation of an inadequately capitalized corporation as a separate entity is incompatible with the concepts underlying an independent existence. Where it is sought on the one hand to make available to general or tort creditors only an illusory amount compared

---

7. "When the operating assets of a corporation are honestly committed to it, no exception can be taken to the legal exemption from individual liability. When such assets are committed to the agency and operation of another and subsidiary corporation whose capital is inadequate, a different situation may arise." 20 Misc. 2d at 92, 190 N.Y.S.2d at 775.

with the size of the business and the public responsibility inherent in its very nature, while on the other hand advancing necessary expenses through secured devices, it would be a gross inequity to allow such a flimsy organization to provide a shield for personal liability. Courts will not tolerate arrangements which throw all the risks on the public and which enable stockholders to reap profits while being insulated against losses. Plaintiff will not be denied the opportunity to prove inadequate capitalization as a factor to be considered in disregarding the facade of the various and sundry taxicab corporations.

Based upon all of the foregoing, the plaintiff has stated a claim upon which relief may be granted. The complaint alleges more than enough to permit plaintiff to hold the individual and cab company defendants liable if he can prove that the individuals and corporations are inextricably interwoven as a single economic entity. Aside from their attack upon the specific allegations of the complaint, defendants bottom their motions generally on the sanctity of the corporate entity. They argue that if plaintiff is permitted to pierce the corporate veil it would negate the very purpose of doing business in the corporate form, which is designed to relieve the stockholder of liability. See Elenkrieg v. Siebrecht, 238 N.Y. 254, 144 N.E. 519, 34 A.L.R. 592 (1924); Bartle v. Home Owners Cooperative, Inc., 309 N.Y. 103, 127 N.E.2d 832 (1955).

The court is not without guidelines in this area of the law.[8] The general rule for disregarding the corporate entity has been stated often, and is best expressed in the much quoted case of United States v. Milwaukee Refrigerator Transit Co., 142 F. 247, 255 (C.C.E.D. Wis.1905). "If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears: but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." In essence, the rule to be applied and the standard by which a given set of facts are to be judged is one of equity and justice. "What the formula comes down to, once shorn of verbiage about control, instrumentality, agency and corporate entity, is that liability is imposed to reach an equitable result." Latty, Subsidiaries and Affiliated Corporations 191 (1936);[9] Lowendahl v. Baltimore & O. R. Co., supra 247 App.Div. at 155–56, 287 N.Y.S. at 74. The general rule, of course, can serve only as a basis or springboard for application to a given set of facts. "Obviously the acts which will create a situation where equity and justice cannot permit the interposition of the legal defense of incorporations are as many as the vagaries of human conduct." In re Steinberg's Estate, 153 Misc. 339, 334, 274 N.Y.S. 914, 920 (Surr. Ct. 1934).

8. On the general subject of disregarding the corporate entity, see Wormser, The Disregard of the Corporate Fiction & Allied Corporate Problems (1927); Ballantine, Corporations 287–332 (1946); 1 Fletcher, Cyclopedia Corporations 134–76 (1931); Latty, The Corporate Entity as a Solvent of Legal Problems, 34 Mich.L.Rev. 597 (1936); Wormser, Piercing the Veil of Corporate Entity, 12 Colum.L.Rev. 496 (1912).

9. "Despite the absence of allegations of actual fraud, equitable considerations and the plain justice of a situation, depending upon the facts, may lead to a piercing of the corporate veil in some cases, especially those involving 'one-man' or family corporation. Cf. Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, and Helms v. Duckworth, 1957, 101 U.S.App.D.C. 390, 394, 249 F. 2d 482, 486." Francis O. Day Co. v. Shapiro, 105 U.S.App.D.C. 392, 267 F. 2d 669, 673 n. 11 (1959).

The sanctity of a separate corporate identity is upheld only insofar as the entity is consonant with the underlying policies which give it life. The separate personality of a corporation is a privilege granted by the legislature where an artificial person is created by the compliance with various forms and procedures.[10] Certainly a concomitant of the favor of the sovereign in permitting a corporate form of doing business is that the conduct of the entity be compatible with the public interest. The corporate fiction is but a matter of commercial convenience; the concept is not to be extended beyond reason and policy. "The separate corporate form is not a privilege to function under the practices of the jungle." Dix, supra at 483. When the statutory privilege of doing business in the corporate form is employed as a cloak for the evasion of obligations, as a mask behind which to do injustice, or invoked to subvert equity, the separate personality of the corporation will be disregarded.

In discussing corporate entities, though we deal with fictions and artificialities, the court is aware that the corporate form of doing business has found solid support in both law and economics. Courts are loathe to peel away the shell of corporate personality to subject stockholders and parent corporations to liability for the torts of subsidiaries. Yet, when considering the concept of corporate identity, I cannot fail to heed the words of Cardozo. "The whole problem of the relation between parent and subsidiary corporations is one that is still enveloped in the mists of metaphor. Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it. * * * The logical consistency of a juridical conception will indeed be sacrificed at times, when the sacrifice is essential to the end that some

accepted public policy may be defended or upheld." Berkey v. Third Avenue Ry., supra, 244 N.Y. at 95, 155 N.E. at 61 (1926). The quoted language is equally applicable to the relations between corporations and their stockholders and is as pertinent now as when it was originally written. "Thus, whether individual controlling shareholders or a parent company are involved, the same questions arise: do the facts warrant the application of equitable principles—should the court go behind the corporate personality to the individual members, or ignore the separate personality of one company in favor of the economic entity of which it is a part?" Baker & Cary, Cases and Materials on Corporations, 374 (3d ed. 1959). For purposes of these motions, the answers to the foregoing questions must be in the affirmative.

## THE MOTIONS OF FORD MOTOR CO. AND KING FORD MOTORS CO.

Both Ford and King Ford move to dismiss the complaint as against them on the ground that it fails to state a claim upon which relief can be granted. Rule 12(b) (6) Fed.R.Civ.P. Plaintiff has predicated his action against these defendants upon two theories: negligence and breach of warranty. As against Ford, plaintiff alleges that it was negligent in the design, manufacture, assembly and inspection of an inherently dangerous article, the automobile that struck the plaintiff. As against King Ford, the plaintiff alleges that it negligently failed to make a reasonable inspection of the vehicle and that had an inspection been made, the defects of manufacture and design would have been uncovered. The complaint also alleges a breach of implied warranty against both of these defendants.

Privity of contract was originally a necessary element in an action based

---

10. See New York Stock Corporation Law, Article 2. The new Business Corporation Law, effective September 1, 1963, re- places both the Stock Corporation Law and the General Corporation Law.

upon negligent manufacture of a chattel. Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402 (Exch. 1842). But the courts quickly began to limit the requirement of privity by creating an exception for products which were dangerous by their nature, i. e., products inherently dangerous. Thomas v. Winchester, 6 N. Y. 397 (1852); Devlin v. Smith, 89 N.Y. 470 (1882); Torgesen v. Schultz, 192 N. Y. 156, 84 N.E. 956, 18 L.R.A.,N.S., 726 (1908); Statler v. George A. Ray Mfg. Co., 195 N.Y. 478, 88 N.E. 1063 (1909). In the landmark case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696 (1916), the exception was expanded to embrace not only products which were inherently dangerous, but also those which were dangerous if defectively made. "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected." 217 N.Y. at 389, 111 N.E. 1053. The exception has now become the general rule imposing liability for negligence on the supplier of a chattel. See Carter v. Yardley & Co., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559 (1946). The duty of care, without privity, "has now become so well established that it would be sheer affectation to pile up citation of decisions upon it." Carpini v. Pittsburgh & Weirton Bus Co., 216 F.2d 404, 405 (3d Cir. 1954).

MacPherson properly focused attention upon the risk of harm which a defendant's conduct foreseeably entails. See Messina v. Clark Equipment Co., 263 F. 2d 291, 293 (2d Cir.), (dissenting opinion), cert. denied, 359 U.S. 1013, 79 S.Ct. 1150, 3 L.Ed.2d 1037 (1959); 2 Harper & James, Torts 1042 (1956); Seavey, Mr. Justice Cardozo and the Law of Torts, 52 Harv.L.Rev. 372, 381 (1939). Although MacPherson itself involved personal injury to a purchaser of an automobile the doctrine has been extended to encompass other users. E. g., Rose-

brock v. General Electric Co., 236 N.Y. 227, 140 N.E. 571 (1923) (employee of purchaser); Quackenbush v. Ford Motor Co., 167 App.Div. 433, 153 N.Y.S. 131 (1915) (subsequent purchaser); Levitt v. Ford Motor Co., 28 Misc.2d 599, 215 N.Y.S.2d 677, 679 (1961) (member of purchaser's family); Hoenig v. Central Stamping Co., 273 N.Y. 485, 6 N.E.2d 415 (1936) (user). Since there is no doubt that it is within the realm of reasonable foreseeability that others besides users could be injured by a defective product, bystanders and other persons "in the vicinity of its probable use" were brought within the ambit of the rule. Restatement, Torts § 395; Statler v. Ray Mfg. Co., supra; Kalinowski v. Truck Equipment Co., 237 App.Div. 472, 261 N. Y.S. 657 (4th Dept. 1933) (pedestrian); Ford Motor Co. v. Zahn, 265 F.2d 729 (8th Cir. 1959); Carpini v. Pittsburgh & Weirton Bus Co., supra; Gaidry Motors v. Brannon, 268 S.W.2d 627 (Ky. 1954); Okker v. Chrome Furniture Mfg. Corp., 26 N.J.Super. 295, 97 A.2d 699 (1953); Flies v. Fox Bros. Buick Co., 196 Wis. 196, 218 N.W. 855, 60 A.L.R. 357 (1928) (pedestrian); McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.2d 122 (1927). In fact, Judge Cardozo himself, in MacPherson projected this development when he responded to the argument that injury to others besides the owner cannot be foreseen. "We take a different view. We think that injury to others is to be foreseen not merely as a possible, but as an almost inevitable, result." 217 N.Y. at 392, 111 N.E. at 1053.

The rule of MacPherson also extends to defendants who are not manufacturers. E. g., Mueller v. Teichner, 6 N.Y.2d 903, 190 N.Y.S.2d 709, 161 N.E.2d 14 (1959); Monaco v. Hall-Ehlert GMC Sales, Inc., 3 A.D.2d 90, 158 N.Y.S.2d 444 (3d Dept. 1956); Gaidry Motors, Inc. v. Brannon, supra; Flies v. Fox Bros. Buick Co., supra; see Alexander v. Nash-Kelvinator Corp., 261 F.2d 187, 190 (2d Cir. 1958), modified as to dam-

ages, 271 F.2d 524 (2d Cir. 1959); Restatement, Torts §§ 402, 396 and comment c. The complaint alleges a negligent failure to inspect the vehicle before sending it further along the chain of commerce where it might reasonably be anticipated to cause injury if defectively made or designed. This states a claim against King Ford. And the manufacturer does not become insulated from liability merely because the dealer had an opportunity to inspect the automobile prior to resale and failed to do so. Alexander v. Nash-Kelvinator Corp., supra; Restatement, Torts § 396.

■ Defendant King Ford argues that even if negligence be shown, there was an intervening act of negligence on the part of Colt Co. and Fermaglick such that no reasonable man could be expected to foresee. An intervening act of negligence does not by itself necessarily insulate a supplier from liability. See Rosebrock v. General Elec. Co., supra; Sider v. General Electric Co., 203 App. Div. 443, 197 N.Y.S. 98 (4th Dept. 1922); aff'd., 238 N.Y. 64, 143 N.E. 792, 34 A. L.R. 158 (1924); Restatement, Torts § 447; 2 Harper & James, Torts 1555 (1956); cf. McLaughlin v. Mine Safety Appliance Co., 11 N.Y.2d 62, 226 N.Y.S. 2d 407, 181 N.E.2d 430 (1962). Foreseeability remains the touchstone. And it has long been accepted that foreseeability does not mean that the precise hazard, risk or chain of events must be anticipated. Restatement, Torts § 435. "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." Munsey v. Webb, 231 U.S. 150, 156, 34 S.Ct. 44, 58 L.Ed. 162 (1913); Palsgraf v. Long Island R. Co., 248 N.Y. 339, 344, 162 N.E. 99, 100, 59 A.L.R. 1253 (1928). There is no doubt that "the range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury." Id. at 345, 162 N.E. at 101.

The question of foreseeability here should be left to the jury. See Kalinowski v. Truck Equipment Co., supra; Noel, Manufacturers' Negligence of Design or Directions for Use of a Product, 71 Yale L. J. 816, 855–862 (1962). It will be for the jury to determine whether the alleged negligence of Ford and King Ford proximately caused the accident which resulted in injury to the plaintiff.

■ Plaintiff also seeks to state a claim against Ford and King Ford upon a theory of strict liability. He alleges that defendants breached their implied warranties of merchantability. Defendants move to dismiss on the ground that there is no privity of contract between plaintiff and either of these two defendants.

In 1931 Cardozo uttered his oft quoted remark: "The assault upon the citadel of privity is proceeding in these days apace." Ultramares Corp. v. Touche, 255 N.Y. 170, 180, 174 N.E. 441, 445, 74 A. L.R. 1139 (1931). In the area of negligence liability the citadel has long since crumbled. But in the field of breach of warranty, the defenders have continued, albeit with decreasing success, to repel the attack. The law in New York, for many years, has been clear. "There can be no warranty, express or implied, without privity of contract (Turner v. Edison Storage Battery Co., 248 N.Y. 73, 74, 161 N.E. 423, 424; Pearlman v. Garrod Shoe Co., 276 N.Y. 172, 11 N.E.2d 718) since a warranty is an incident of a contract of sale (Fairbank Canning Co. v. Metzger, 118 N.Y. 260, 265, 23 N.E. 372, 373). The warranty does not run with the chattel (Nichols v. Clark, MacMullen & Riley, 261 N.Y. 118, 184 N.E. 729). Therefore, as to food or other merchandise, there are no implied warranties of merchantability or fitness except as to the buyer (Chysky v. Drake Bros. Co., 235 N.Y. 468, 139 N.E. 576, [27 A.L.R. 1533] supra; Ryan v. Progressive Grocery Stores, 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339)." Greenberg v. Lorenz, 9 N.Y.2d 195, 198; 213 N.Y.S.2d 39, 41; 173

N.E.2d 773, 774 (1961); Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950); Monaco v. Chrysler Sales Corp., 191 F.Supp. 648 (S.D.N.Y.1961). No such privity exists here between plaintiff and defendants Ford and King Ford.

The requirement of privity did not, however, find universal acceptance. Courts in other jurisdictions dispensed with the need for privity in cases involving food and constructed a rule of strict liability. E. g., Mazetti v. Armour & Co., 75 Wash. 622, 135 P. 633, 48 L.R.A.,N.S., 213 (1913); Klein v. Duchess Sandwich Co., 14 Cal.2d 272, 93 P.2d 799 (1939); Caskie v. Coca-Cola Bottling Co., 373 Pa. 614, 96 A.2d 901 (1953); Welter v. Bowman Dairy Co., 318 Ill.App. 305, 47 N.E. 2d 739 (1943). And some states provide for strict liability as to food by statute. E. g., Conn.Gen.Stat. § 2161c (Supp. 1953); Bolitho v. Safeway Stores, Inc., 109 Mont. 213, 95 P.2d 443 (1939). The basis for the rule is the special responsibility which the law historically has imposed upon sellers of food. See American Law Institute, Restatement of the Law 2d. Torts, Tentative Draft No. 6, § 402A at 33–34 (1961) Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1103–06 (1960). New York, for many years, remained among the decreasing number of jurisdictions which rejected strict liability and continued to require privity of contract in order to hold a seller of food liable in the absence of negligence. See Chysky v. Drake Bros. Co., 235 N.Y. 468, 139 N.E. 576, 27 A.L.R. 1533 (1923); Redmond v. Borden's Farm Prods. Co., 245 N.Y. 512, 157 N.E. 838 (1927); Bourcheix v. Willow Brook Dairy, Inc., 268 N.Y. 1, 196 N.E. 617, 98 A.L.R. 1492 (1935). Attempts to relax the privity rule by invoking a theory of third party beneficiary were generally unsuccessful. Gimenez v. Great Atlantic & Pacific Tea Co., 264 N.Y. 390, 191 N.E. 27 (1934); Monaco v. Chrysler Sales Corp., supra; but see Parish v. Great Atlantic & Pacific Tea Co., 13 Misc.2d 33, 177 N.Y.S.2d 7 (Mun.Ct.1958); Conklin v. Hotel Waldorf Astoria Corp., 5 Misc.2d 496, 161 N.Y.S.2d 205 (City Ct. 1957). Some whittling away of the privity doctrine was accomplished, however, by utilizing an agency theory to allow an injured plaintiff who bore a family relationship to the buyer to be regarded as being in privity with the seller. Ryan v. Progressive Grocery Stores, Inc., 255 N.Y. 388, 175 N.E. 105, 74 A. L.R. 339 (1931); Bowman v. Great Atlantic & Pacific Tea Co., 284 App.Div. 663, 133 N.Y.S.2d 904 (4th Dept. 1954), aff'd., 308 N.Y. 780, 125 N.E.2d 165 (1955); Mouren v. Great Atlantic & Pacific Tea Co., 1 N.Y.2d 884, 154 N.Y.S.2d 642, 136 N.E.2d 715 (1956). Despite the weight of authority in this state, some lower New York courts were attempting to change the privity rule. See Welch v. Schiebelhuth, 11 Misc.2d 312, 169 N.Y.S. 2d 309 (S.Ct.1957); Parish v. Great Atlantic & Pacific Tea Co., supra; Lardaro v. MBS Cigar Corp., 10 Misc.2d 873, 177 N.Y.S.2d 6 (Mun.Ct.1957); Conklin v. Hotel Waldorf Astoria Corp., supra. These efforts from below foreshadowed the recent decision of the Court of Appeals in Greenberg v. Lorenz, 9 N.Y.2d 195, 213 N.Y.S.2d 39, 173 N.E.2d 773 (1961), whereby New York joined the growing majority of jurisdictions in imposing strict liability upon sellers of food.

In Greenberg v. Lorenz, a father and his infant daughter sued a retailer for injuries sustained by the daughter as a result of eating canned salmon purchased from defendant by the father. The salmon contained a small hooked shaped metal pin with two small plastic disks attached to it. Notwithstanding the fact that lack of privity was urged as a bar to the daughter's suit for breach of implied warranty, the trial court recognized the growing trend away from the restriction and gave judgment for both plaintiffs. 14 Misc.2d 279, 178 N.Y.S.2d 404 (City Ct. 1957). On appeal, the Appellate Term, in a forward looking opinion, af-

firmed, 12 Misc.2d 883, 178 N.Y.S.2d 407 (1st Dept. 1958). The Appellate Division modified the judgment by dismissing the complaint of the daughter. The five line per curiam opinion relied upon Chysky v. Drake Bros. Co., supra and Salzano v. First National Stores, Inc., 268 App.Div. 993, 51 N.Y.S.2d 645 (2d Dept. 1944). Greenberg v. Lorenz, 7 A. D.2d 968, 183 N.Y.S.2d 46 (1st Dept. 1959). The Court of Appeals reversed the Appellate Division and reinstated the judgment in favor of the daughter. 9 N.Y.2d 195, 213 N.Y.S.2d 39, 173 N.E.2d 773 (1961). After outlining the precedents upholding privity, the Court chose to effect a change in the law of New York. Recognizing the inherent unfairness of the privity restriction and the "increasing tendency to lessen the rigors of the rule," (9 N.Y.2d at 200, 213 N.Y.S. 2d at 42, 173 N.E.2d at 775), the Court held that the daughter's cause of action should not have been dismissed. "Today when so much of our food is bought in packages it is not just or sensible to confine the warranty's protection to the individual buyer. At least as to food and household goods, the presumption should be that the purchase was made for all the members of the household." Ibid.

With Greenberg v. Lorenz as a foundation, plaintiff urges this court to take the next step and do away completely with the need for privity. He proposes, in effect, that the court hold that a claim is stated against King Ford and Ford on the basis of a strict liability theory in the nature of a breach of warranty. In order to do so, not one but two steps must be taken. First, the elimination of privity must be extended to products beyond food, and second, the area of protectibility must be broadened to include plaintiffs other than ultimate consumers.

Within recent years the assault upon the citadel of privity has carried beyond food in many jurisdictions. The extensions of strict liability which have been most readily accepted by the courts have concerned products for intimate bodily use. See, e. g., Chapman v. Brown, 198 F.Supp. 78 (D.Hawaii 1961) (hula skirt); Bowles v. Zimmer Mfg. Co., 277 F.2d 868 (7th Cir. 1960) (surgical pin); Markovich v. McKesson & Robbins, 106 Ohio App. 265, 149 N.E.2d 181 (1958) (permanent wave); Graham v. Bottenfield's, Inc., 176 Kan. 68, 269 P.2d 413 (1954) (hair dye). But some courts have gone beyond these narrow confines to encompass other more diverse products. See, e. g., Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N.W.2d 873 (1958) (cinder blocks); McAfee v. Cargill, Inc., 121 F. Supp. 5 (S.D.Cal.1954) (dog food); Peterson v. Lamb Lumber Co., 54 Cal.2d 339, 5 Cal.Rptr. 863, 353 P.2d 575 (1960) (grinding wheel); Continental Copper & Steel Industries, Inc. v. E. C. "Red" Cornelius, Inc., 104 So.2d 40 (Fla.App.1958) (electric cable); Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670 (1959) (dictum as to all products). And liability without privity in cases involving automobiles has been coming to the fore of late. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A. L.R.2d 1 (1960); Pabon v. Hackensack Auto Sales, Inc., 63 N.J.Super. 476, 164 A.2d 773 (1960); General Motors Corp. v. Dodson, 47 Tenn.App. 438, 338 S.W. 2d 655 (1960); Jarnot v. Ford Motor Co., 191 Pa.Super. 422, 156 A.2d 568, 569 (1959) (truck); B. F. Goodrich Co. v. Hammond, 269 F.2d 501 (10th Cir. 1959) (tires); Magee v. General Motors, 124 F.Supp. 606 (W.D.Pa.1954) (dictum).

In New York, the defenders of the citadel of privity have suffered another setback. In Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962), the Court of Appeals dispensed with the need for privity in an action for breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in advertising and on labels affixed to the goods. Reviewing its holdings in warranty cases, the Court

again recognized the trend away from technical privity requirements. Changed conditions in methods of marketing call forth changes in judicial rules constructed to serve an earlier era. Public policy makes it "highly unrealistic to limit a purchaser's protection to warranties made directly to him by his immediate seller." 226 N.Y.S.2d at 368, 181 N.E.2d at 402.

The decision in Randy Knitwear is too recent to have evoked extensive comment in the lower courts of New York. But Greenberg v. Lorenz has had sufficient time within which to have an effect upon other cases.

The Appellate Division of the Fourth Department has been most forward looking in extending Greenberg to products other than food and household goods. In Thomas v. Leary, 15 A.D.2d 438, 225 N.Y.S.2d 137 (4th Dept. 1962), plaintiff, injured when a chair belonging to his dentist-employer collapsed, sued the seller of the chair. Construing the claim as one for breach of implied and express warranties, the court held that an employee of a purchaser may maintain an action against a seller of non-food products for damages resulting from breach of warranty. The court interpreted Greenberg as looking toward a liberalization of the privity rule beyond its own facts and was quite willing to take the next "logical and progressive step at this time." 15 A.D.2d at 440, 225 N.Y.S.2d at 139. Thus the court extended the area of protectibility to include non-food products and employees of purchasers. In Amie v. Laure, 16 A.D.2d 736, 226 N.Y.S. 2d 832 (4th Dept. 1962), the same court reversed the dismissal of a complaint of a wife who was injured while mixing cement purchased by her husband. The Supreme Court, in dismissing the complaint, had refused to extend Greenberg beyond food. 213 N.Y.S.2d 41, 173 N.E.

2d 773 (S.Ct.1962).[11] The short memorandum of reversal merely cited Thomas v. Leary, supra, and Randy Knitwear. In Simpson v. Eichenbrunner, 31 Misc.2d 958, 217 N.Y.S.2d 678 (App.Term 1st Dept.1961), the Appellate Term of the First Department made a similar extension of Greenberg. There, an employee of a purchaser of a machine was permitted to sue the seller for breach of warranty. But his suit against the manufacturer was denied for lack of privity. Quaere, whether the latter holding has any vitality now in the light of Randy Knitwear?

Cases in the Supreme Courts of New York have not only evidenced no tendency to extend Greenberg v. Lorenz, but they have not even read it liberally. In Rypins v. Rowan, 30 Misc.2d 568, 219 N.Y.S.2d 288 (S.Ct.1961), the court refused to consider a combination storm door affixed to the home as coming within the meaning of "household goods." In Waful v. Contractors Syracuse Sales Co., 31 Misc. 2d 77, 219 N.Y.S.2d 1004 (S.Ct.1961), the action for breach of warranty was brought by injured employees of a corporation which had leased construction equipment. The court read Greenberg restrictively as applicable only to "food cases in which there is involved a principal-agent question as to the purchaser and the plaintiff." 31 Misc.2d at 79, 219 N.Y.S.2d at 1006. Finding the agency theory inapplicable and finding that any analogy between the necessity of public protection in the field of food and the field of construction equipment to be strained, the court refused to extend Greenberg. Anderson v. Radio Corporation of America, 33 Misc.2d 806, 221 N. Y.S.2d 337 (S.Ct.1961), involved an exploding gas range which injured the wife of the purchaser. Although recognizing that Greenberg extended the benefit of a warranty to all members of a household,

11. The report of the decision contains no description of how the injury occurred. Greenberg abolished the need for privity in cases of food *and household goods*. It is certainly conceivable, if not probable, that the cement was being utilized for some household repair, but this point was not discussed by the court below.

the court refused to sustain the claim on the ground that the husband had purchased the range from a dealer and was therefore not in privity with the manufacturer. But see Randy Knitwear v. American Cyanamid Co., supra. In Sparling v. Podzielinski, 32 Misc.2d 227, 223 N.Y.S.2d 10 (S.Ct.1962), the court refused to extend Greenberg to encompass an action by a purchaser of a water ski tow rope against a wholesaler. Serrano v. Riverside Dinette Products Co., Sup., 222 N.Y.S.2d 537 (S.Ct.1961), was an action for personal injuries resulting from a defective chair. The suit was brought by a guest of the purchaser who had bought the chair from a retail store. The court refused to enlarge Greenberg to encompass an action brought against anyone but the immediate seller, and also refused to extend the doctrine "to cover a casual social guest of the purchaser." 222 N.Y.S.2d at 540. Finally, in Levitt v. Ford Motor Co., 28 Misc.2d 740, 215 N.Y.S.2d 679 (S.Ct.1961), the purchaser of an automobile brought an action against the manufacturer for personal injuries sustained when a tire blew out. In refusing to sustain the claim for breach of warranty, the court stated that "whether the rule in the Greenberg case should be extended to automobiles is a matter for the appellate courts to decide." 28 Misc.2d at 742, 215 N.Y.S.2d at 681. Thus, although the lower New York courts paved the way for the leap forward taken in Greenberg v. Lorenz, they have, with but two exceptions, evidenced a reluctance to go beyond the facts of Greenberg.

Carrying the rejection of the privity rule beyond food to cover other products presents little difficulty. Greenberg v. Lorenz and Randy Knitwear provide the bases for the trend to liberalization. The unfairness of the privity requirement discussed in Greenberg is not lessened because products other than food are involved. And the thrust of Randy Knitwear, notwithstanding that express representations existed, cannot be said to be limited to the specific product there discussed. The limitation of privity in breach of warranty actions dates from the days when the commercial character of the transaction was paramount. But as marketing changed and manufacturers began to cultivate the ultimate consumer through the importunings of advertising, the limitations were relaxed in the interests of consumer protection. As long as courts continue to utilize warranties in the field of accident law "as vehicles of social policy, the courts should extend them as far as the relevant social policy requires." 2 Harper & James, op. cit. supra at 1571; see Prosser, supra at 1138–40. Although the need for relaxation of the privity rule for commodities for bodily use may evoke greater emotional fervor, the public interest extends to other products as well. This is especially so at least in the automobile field, where the product is inherently dangerous or may become dangerous if defectively made. "Thus, where the commodities sold are such that if defectively manufactured they will be dangerous to life or limb, then society's interests can only be protected by eliminating the requirement of privity between the maker and his dealers and the reasonably expected ultimate consumer." Henningsen v. Bloomfield Motors, Inc., supra, 161 A.2d at 81 (1960). If the doctrine of privity is to be liberalized in New York, and I believe the Court of Appeals has so indicated, there is no logical reason to restrict such an extension to foodstuffs. Thomas v. Leary, supra, 225 N.Y.S.2d at 140. "[I] see no rational doctrinal basis for differentiating between a fly in a bottle of beverage and a defective automobile. The unwholesome beverage may bring illness to one person, the defective car, with its great potentiality for harm to the driver, occupants, and others, demands even less adherence to the narrow barrier of privity." Henningsen v. Bloomfield Motors, Inc., supra, 161 A.2d at 83. Thus, the step involved in extend-

ing liability without privity to encompass automobiles can be taken.

The second step which plaintiff would have this court take, however, is one which finds no support in the decisions. The cases which have eliminated privity all speak in terms of ultimate consumer or user. I have been unable to find any case which has granted recovery to a person other than a user of the product.[12] Consumer and user, however, have been interpreted broadly. See Graham v. Bottenfields, Inc., 176 Kan. 68, 269 P.2d 413 (1954) (beauty shop customer whose hair treated with dye); Haut v. Kleene, 320 Ill.App. 273, 50 N.E.2d 855 (1943) (wife preparing rabbit contracted tularemia); Miller v. Louisiana Coca-Cola Bottling Co., 70 So.2d 409 (La.App.1954) (guest of purchaser); Thomas v. Leary, supra (employee of purchaser who sat on a chair). But recovery has been denied to one who is a casual handler or has a mere contact with the product. See Torpey v. Red Owl Stores, 129 F.Supp. 404 (D.Minn.), aff'd., 228 F.2d 117 (8th Cir. 1955) (sister of purchaser attempting to reseal jar); Loch v. Confair, 361 Pa. 158, 63 A.2d 24 (1949) (shopper handling bottle in supermarket). No case has yet extended the reach of strict liability without privity to cover innocent bystanders. See Serrano v. Riverside Dinette Products Co., supra (refusal to extend doctrine to cover a casual social guest of purchaser). In Thomas v. Leary, supra, the court, although extending the reach of warranty, was careful to circumscribe the extension as to the plaintiffs to be covered. 15 A.D.2d at 443, 225 N.Y.S.2d at 142.

An argument can be made for extending the warranty theory to allow recovery by a bystander. This involves a recognition that the breach of warranty action was originally an action on the case in tort, and that it was not until later in the development of the common law that a warranty action was maintained in assumpsit. See Stuart v. Wilkins, 1 Doug. 18, 99 Eng.Rep. 15 (K.B.1778); Ames, History of Assumpsit, 2 Harv.L.Rev. 1 (1888); Prosser, supra at 1126–27. "In the historical development of the law of warranty, however, as so often happens in law and life in general, accident was evidently confused with essence: from the fact that the cases which arose involved contractual relationships and represented enforcible promises, the courts seem to have concluded that the contract was the essence of the action. (See Prosser, Torts [2d ed., 1955], § 84, p. 507.) The occasion for the warranty was constituted a necessary condition of it." Randy Knitwear v. American Cyanamid Co., 11 N.Y.2d 5, 10 n. 2, 226 N.Y.S.2d 363, 366 n. 2, 181 N.E.2d 399, 401 (1962). Dean Prosser has characterized warranty as "a freak hybrid born of the illicit intercourse of tort and contract." Prosser, supra at 1126.

If the courts are willing to shift their focus to the tort aspects of warranty, there is no reason to deny recovery to a bystander who is injured. "Such injury is often a perfectly foreseeable risk of the maker's enterprise, and the considerations for imposing such risks on the maker without regard to his fault do not stop with those who undertake to use the chattel. Such a restriction is only the distorted shadow of a vanishing privity which is itself a reflection of the habit of viewing the problem as a commercial one between traders, rather than as part of the accident problem." 2 Harper & James, op. cit. supra at 1526 n. 6; see Prosser, supra, at 1127, 1134. But the

---

12. The case of Chapman Chemical Co. v. Taylor, 215 Ark. 630, 222 S.W.2d 820 (1949) has been cited as an exception to the statement in text. See American Law Institute, Restatement 2d Torts, Tentative Draft No. 6 at 31 (1961). There, plaintiff recovered for damages to crops resulting from the drifting of a spray. The case does not, however, speak in terms of warranty. Moreover, it is bottomed on the doctrine of liability for consequences of an ultrahazardous activity.

courts, although moving toward strict liability, seem unwilling to give up the contractual concepts of warranty. This is so even though adherence to "the concept of warranty has involved so many major difficulties and disadvantages that it is very questionable whether it has not become rather a burden than a boon to the courts in what they are trying to accomplish." Prosser, supra at 1127. Dean Prosser, in his erudite article on strict liability, cited supra, sets forth some of the problems which the warranty framework breeds. Among them he lists the nature of the damages recoverable, problems of reliance, the scope of the warranty, notice, rescission and disclaimer. Prosser, supra at 1127–1134. Recognition of the difficulties and drawbacks inherent in adapting the warranty theory to serve in the field of accident law has led the American Law Institute to eschew use of the word "warranty" in the proposed new section of the Restatement dealing with the liability of suppliers of chattels. See American Law Institute, Restatement, 2d, Torts, Tentative Draft No. 6, § 402A, pp. 32–33, 38–39 (1961); American Law Institute, Proceedings 1961, 76–78 (1961).

The tort history of an action for breach of warranty was recognized by the New York Court of Appeals in Randy Knitwear. But the footnote in which Judge Fuld questioned the contractual nature of warranty actions did not indicate that the Court was willing to dispense altogether with warranty concepts and accept strict liability in tort only. It should be noted that the case involved a misrepresentation, a wrong traditionally actionable in tort. Moreover, three of the seven judges concurred in the result only, expressing an unwillingness "to dispense with the requirement of privity without limitation." 11 N.Y.2d at 16, 226 N.Y.S.2d at 371, 181 N.E.2d at 404; see Greenberg v. Lorenz, supra, 9 N.Y.2d at 200, 213 N.Y.S.2d at 43, 173 N.E.2d 776 (concurring opinion). The trend toward liberalization of the privity re-

quirement is thus anything but certain in so far as it concerns protection for non-consumers. See Thomas v. Leary, supra; Serrano v. Riverside Dinette Products Co., supra; Prosser, supra at 1142; American Law Institute, Restatement 2d, Torts, Tentative Draft No. 6 at 31, 39 (1961). Even the landmark case of Henningsen v. Bloomfield Motors, Inc., supra, in New Jersey hesitated to go beyond members of the family and foreseeable users. The New York courts seem at this time to be unwilling to discard completely the contractual crutch of warranty in their movement toward strict liability. Perhaps the reluctance to impose upon the seller strict liability to bystanders is based upon the feeling "that they are not the people whom he seeks to reach with his goods, and so they do not have the same reason to rely upon any implied assurance of safety." Prosser, supra at 1142. Absent any clear and persuasive indication that the New York Court of Appeals will extend the relaxation of privity to bystanders, I am constrained to hold that plaintiff has failed to state a claim for breach of warranty. See West v. American Telephone & Telegraph Co., 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

Defendant Ford Motor Company also moves to dismiss pursuant to Rule 8(e), Fed.R.Civ.P. Defendant contends that the complaint fails to separately state the claims based on negligence and breach of warranty or to plead them in the alternative. No authority is cited in support of its position. I find no merit in the contentions. "Moreover, the motion under Rule 8(e) does not go to the sufficiency of the complaint and noncompliance with this rule would not be grounds for dismissal." Buchholtz v. Renard, 188 F.Supp. 888, 890 (S.D.N.Y. 1960). The same disposition is also applicable to King Ford.

In summary then, the motions of Edwin Ackerman, Janith Ackerman, Samuel T. Goodman and Marion Goodman are in all respects denied. The motions of the

taxicab corporate defendants are in all respects denied. The motions of Ford Motor Company and King Ford Motors, Inc. are also denied. Although plaintiff's complaint fails to state a claim against the latter two defendants on the ground of breach of warranty, the complaint does state a claim on the ground of negligence. A complaint will not be dismissed if one of the alternative grounds alleged is sufficient to sustain the claim. Taylerson v. American Airlines, Inc., 183 F.Supp. 882, 884 (S.D.N.Y.1960).

Accordingly, all the motions to dismiss the complaint are denied. It is So Ordered. No settlement necessary.